Defendant-appellant, Kevin O. Green, appeals from a judgment of the Franklin County Court of Common Pleas whereby appellant was convicted of murder in the death of Christina Jones, pursuant to a jury trial.
The evidence introduced at trial established the following general factual background. Jones and appellant were in a relationship at the time of Jones's murder. Three to four weeks before the murder, appellant became angry with Jones because she was talking on the telephone to Leon Hawkins, a former boyfriend. Appellant ripped the telephone out of the wall and began choking Jones.
On May 31, 1997, the day preceding Jones's murder, appellant discovered that Hawkins sent Jones a letter. Appellant told Jerrica Farrington, Jones's babysitter, "I'm going to kill somebody." That same day, appellant told Myra Isom, Jones's friend, that Hawkins had visited Jones on May 30. Appellant told Isom that he felt like he was going to kill somebody. Appellant told Stacey Flood, another friend of Jones, that he would kill Jones if he ever caught her with another man.
Later that evening, appellant and his friend Donte Ball arrived at a bar called Baby-O's to meet Jones. Jones was with her friend Isom. Jones and appellant began arguing in the bar and continued to argue when they left the bar around closing time. Jones, Isom and appellant left in appellant's car. Jones was driving appellant's car but pulled over a few blocks from Baby-O's because she was too intoxicated to drive. Appellant and Jones continued to argue. Isom left to get another ride home.
A few moments later, appellant crashed his car into a tree in front of Kim Hike's house on Sullivant Avenue. When Hike looked out the window, she saw an African-American man exit the car. Hike stated that, when the African-American woman tried to exit the car, the man slammed the door on her legs. Hike saw the woman walk towards Hague Avenue after getting out of the car.
William Hansford lives across the street from 342 South Hague Avenue, the house by which Jones's body was later found. In the early morning hours of June 1, he heard two people arguing outside. He witnessed an African-American man pacing in the street. Hansford testified that the man walked behind a brick wall extending from the house on 342 South Hague Avenue. According to Hansford, when the man came from behind the wall, he walked towards Sullivant Avenue.
Rhonda Lunce lives at 350 South Hague Avenue. In the early morning hours of June 1, she heard an African-American man and woman arguing in the street. About fifteen minutes later, she heard a muffled scream and a snapping sound. At 7 o'clock in the morning on June 1, Jones's slain body was found behind a brick wall on 342 South Hague Avenue.
Appellant appeals, raising the following assignments of error:
"ASSIGNMENT OF ERROR I
 "THE TRIAL COURT COMMITS REVERSIBLE ERROR BY PERMITTING THE STATE TO PRESENT INADMISSIBLE HEARSAY EVIDENCE TO THE JURY, IN VIOLATION OF MR. GREEN'S RIGHT TO A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS.
"ASSIGNMENT OF ERROR II
 "REVERSIBLE ERROR IS COMMITTED BY THE TRIAL COURT WHEN IT OVERRULES A DEFENSE MOTION FOR A MISTRIAL, REQUESTED AFTER A STATE'S WITNESS MAKES INFLAMMATORY REMARKS IN FRONT OF THE JURY, DURING A SIDEBAR THE COURT WAS HOLDING WITH COUNSELS, THEREBY VIOLATING MR. GREEN'S RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS.
"ASSIGNMENT OF ERROR III
 "THE TRIAL COURT'S CAUTIONARY INSTRUCTIONS GIVEN IN AN ATTEMPT TO CURE TWO SUBSTANTIVE ERRORS IN MR. GREEN'S TRIAL WERE NOT SUFFICIENT TO OVERCOME THEIR PREJUDICIAL EFFECT ON THE JURY, THEREBY DENYING MR. GREEN HIS RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS.
"ASSIGNMENT OF ERROR IV
 "THE VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE AND WAS BASED ON INSUFFICIENT EVIDENCE TO SUSTAIN SAID VERDICT."
We will first address appellant's fourth assignment of error. In his fourth assignment of error, appellant argues that the jury's verdict is not supported by sufficient evidence. We disagree.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380,386. When reviewing whether a verdict was supported by the sufficiency of the evidence, an appellate court examines the evidence in a light most favorable to the prosecution and concludes whether any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273.
Thus, in order to find appellant guilty of murder, the jury had to conclude that appellee proved, beyond a reasonable doubt, that appellant purposely caused Jones's death. We determine that the sequence of events, as well as the testimony by Hansford and Lunce, establish the essential elements of the crime of murder; reasonable minds could very well conclude beyond a reasonable doubt that appellant killed Jones.
Jones had been arguing with appellant on the evening of May 31, and into the morning of June 1, 1997. The record shows that Jones was with appellant when he crashed his car on Sullivant Avenue. This showing is based on Hike's testimony and a stipulation that glass found on Jones's body was common in origin to glass recovered from appellant's car. The parties also stipulated that the blood recovered from appellant's car was consistent with Jones's blood. Jones exited the car and walked towards Hague Avenue. In the early morning hours of June 1, William Hansford heard an African-American man and woman fighting in the street outside of his house on South Hague Avenue. Rhonda Lunce also heard an African-American man and woman fighting outside her home on South Hague in the early morning hours of June 1. Hansford, looking out the window, saw an African-American man pacing in the street. Hansford's description of what the man was wearing matches Flood's and Farrington's descriptions of what appellant was wearing when he went out that evening.
Hansford witnessed the man walk behind a brick wall on 342 South Hague Avenue. Jones's body was found behind the brick wall from which Hansford saw the man disappear. Lunce testified that she heard a muffled scream and a snapping noise about fifteen minutes after she heard the two people arguing. Thus, we conclude that there is sufficient evidence to support the jury's finding that appellant killed Jones. Additionally, we conclude that there is sufficient evidence to support the jury's finding that appellant purposely caused Jones's death.
As noted above, the record shows that appellant became upset upon finding out that Jones had been talking with her former boyfriend, Leon Hawkins. A few weeks before the murder, when appellant discovered that Jones was talking to Hawkins on the telephone, he ripped the telephone out of the wall and began choking her. On May 31, the day before Jones's murder, appellant became upset when he discovered that Jones received a letter from Hawkins. That day, appellant told Farrington that he was going to kill somebody. Additionally, that same day, appellant told Flood that he would kill Jones if he ever caught her with another man. Moreover, on May 31, appellant also told Isom that he felt like he was going to kill somebody because he found out that Hawkins had visited Jones the day before.
On the evening of May 31, and into the morning of June 1, Jones and appellant were continuously arguing. After appellant crashed his car, the verbal confrontation became physical when appellant slammed the car door on Jones's legs as she tried to exit the car. Moreover, when Jones's body was found, there were no signs of sexual assault or robbery.
As such, we conclude that the evidence supports the jury's finding that appellant purposely caused Jones's death. Accordingly, we find that the evidence is sufficient to support the jury's verdict that appellant murdered Jones.
Additionally, in his fourth assignment of error, appellant asserts that the jury heard inconsistent testimony and, therefore, the verdict is against the manifest weight of the evidence. For example, appellant argues that, after he crashed his car on Sullivant Avenue, he and Jones ran in different directions. Additionally, according to appellant, Hansford's description of the man in front of his house was taller and heavier than appellant. Moreover, according to appellant, Hansford's description of appellant's hairstyle is in conflict with descriptions from those who were with appellant earlier that evening. Additionally, appellant asserts that those who testified about his alleged statements and mood had a bias against him. As such, according to appellant, inconsistencies in the circumstantial evidence and the biased testimony mandate a finding that the verdict is against the manifest weight of the evidence. We disagree.
A conviction may be reversed as being against the manifest weight of the evidence even if supported by sufficient evidence. Thompkins, at 387. In reviewing whether a verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror." Id. Thus, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of witnesses. Id. Additionally, the appellate court "determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545,547-548. Reversing a conviction as being against the manifest weight of the evidence is one reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " Thompkins, at 387.
A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony.State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported (1996 Opinions 2053, 2058). Credibility determinations on conflicting testimony are issues primarily reserved to the trier of fact to be second-guessed only in the most exceptional case. In re Fisher (June 25, 1998), Franklin App. No. 97APF 10-1356, unreported (1998 Opinions 2338, 2345).
In this case, we conclude that the alleged inconsistencies and biases are not substantial and do not undermine the entire testimony heard by the jury. Furthermore, we find nothing in the record to support a finding that appellee's witnesses were not credible. Additionally, as noted above, we find sufficient evidence in favor of the conviction. As such, we find that the jury's verdict, that appellant murdered Jones, is not against the manifest weight of the evidence.
Because we found that the jury's verdict is not against the manifest weight of the evidence and is supported by sufficient evidence, we overrule appellant's fourth assignmet of error.
We next address appellant's first assignment of error, which involves appellee revealing Donte Ball's prior unsworn statements, in combination with the part of appellant's third assignment of error concerning the trial court's curative instruction in response to appellee's examination of Ball.
Donte Ball was with appellant on the night before and morning of Jones's murder. On June 23, 1997, Ball told police that appellant confessed to murdering Jones. The police videotaped Ball as he told them about the confession. Appellee planned on calling Ball to the stand during appellant's trial. On April 7, 1998, Ball's defense attorney informed appellee that Ball would not testify because Ball was intending to assert his Fifth Amendment privilege.
On April 8, 1998, appellee examined Ball outside of the presence of the jury. Appellee asked Ball if it was true that appellant showed him Jones's body and admitted he killed her. Ball stated that he did not remember making that statement. Ball was given an opportunity to refresh his recollection by viewing his videotaped statements.
Later, appellee called Ball to the stand and the jury heard the following testimony:
 "Q. DONTE, I BELIEVE THE QUESTION THAT I HAD ASKED YOU JUST BEFORE WE TOOK A BREAK WAS IF YOU HAD GIVEN A STATEMENT THAT WAS AUDIO RECORDED AND VIDEOTAPED, TWO SEPARATE STATEMENTS TO THE POLICE, WHAT IS YOUR ANSWER TO THAT QUESTION?
"A. I DON'T RECOLLECT. I DON'T REMEMBER.
 "Q. OKAY. ISN'T IT TRUE THAT OVER THE LUNCH HOUR YOU REVIEWED BOTH AN AUDIOTAPE AND VIDEOTAPE OF YOUR STATEMENT TO THE POLICE?
"A. YES.
 "Q. ISN'T IT TRUE THAT ON THAT STATEMENT YOU DID NOT TELL THE POLICE THAT YOU WERE INVOLVED WHATSOEVER WITH THE DEATH OF CHRISTINA JONES; IS THAT TRUE?
"A. I DON'T REMEMBER.
"* * *
 "Q. (BY MS. CANEPA) ISN'T IT TRUE THAT IN THOSE STATEMENTS YOU TOLD THE POLICE THAT KEVIN AND CHRISTINA HAD BEEN ARGUING AT BABY O'S WHEN YOU LEFT WITH KEVIN FROM BABY O'S?
"A. I PLEAD THE FIFTH, YOUR HONOR.
"* * *
 "Q. (BY MS. CANEPA) ISN'T IT TRUE THAT YOU TOLD THE POLICE THAT ABOUT 4:00 IN THE MORNING KEVIN GREEN PAGED YOU AND ASKED YOU TO COME OVER TO HIS HOUSE AT THE FOREST AVENUE ADDRESS?
 "A. I DON'T REMEMBER SAYING THAT. I DON'T RECOLLECT THAT.
"Q. YOU JUST REVIEWED THE VIDEOTAPES?
"A. IT DIDN'T HELP REFRESH MY MEMORY AT ALL.
 "Q. OKAY. ISN'T IT TRUE THAT YOU TOLD THE POLICE THAT KEVIN TOOK YOU OUT TO WHERE CHRISTINA'S BODY WAS, THAT WHEN YOU SAW HER SHE WAS LAYING ON HER BACK ON THE GROUND WITH HER HEAD TO ONE SIDE?
 "MR. EDWARDS: YOUR HONOR, I WOULD JUST OBJECT AND PLEASE NOTE A CONTINUING OBJECTION TO THE QUESTIONS ALONG THIS LINE.
 "THE COURT: YOU CAN HAVE A CONTINUING OBJECTION. OVERRULED.
"THE WITNESS: I DON'T REMEMBER SAYING THAT.
 "Q. (BY MS. CANEPA) OKAY. ARE YOU DENYING HAVING MADE THAT STATEMENT?
"A. I DON'T REMEMBER SAYING IT.
 "Q. ISN'T IT TRUE THAT IN THAT STATEMENT YOU SAID THAT KEVIN TOLD YOU THAT [CHRISTINA JONES] WAS GOING TO CALL THE POLICE ON HIM AND SO HE STRANGLED HER, SHE PASSED OUT, AND WHEN HE LEFT HER THE FIRST TIME HE THOUGHT THAT SHE WAS DEAD? DO YOU REMEMBER TELLING THEM THAT?
"A. NO. I DON'T REMEMBER THAT.
 "Q. AND THEN HE RETURNED BECAUSE HE WASN'T FOR SURE IF SHE WAS DEAD OR NOT. SHE WAS, IN FACT, ALIVE AND TOLD KEVIN THAT HE HAD BROKEN HER NECK AND AT THAT POINT HE TOOK OFF AN ARTICLE OF CLOTHING AND WRAPPED IT AROUND HER NECK AND STRANGLED HER TO DEATH. DO YOU REMEMBER TELLING THE POLICE THAT?
"A. NO.
"Q. YOU DON'T REMEMBER IT?
"A. NO.
"Q. ARE YOU SAYING YOU DIDN'T SAY THAT?
 "A. I'M SAYING I CAN'T REMEMBER IF I SAID THAT OR NOT.
 "Q. OKAY. DO YOU REMEMBER TELLING THE POLICE THAT KEVIN'S EXPLANATION WAS THAT SHE HAD BEEN DISRESPECTING HIM AND THAT ANYBODY THAT DISRESPECTS HIM HAS TO GO? DO YOU REMEMBER MAKING THAT COMMENT?
"THE WITNESS: CAN I SPEAK TO MY LAWYER, PLEASE?
"THE COURT: YES."
When appellee finished its questioning of Ball, appellant moved for a mistrial. The trial court overruled the motion and instructed the jury to disregard all questions and responses made during Ball's examination after his response that he knew appellant. Appellant asserts that Ball's prior unsworn statements constituted inadmissible hearsay and should not have been revealed to the jury. We agree.
In a criminal case where a defendant alleges that prejudicial error occurred during a trial, the reviewing court must first determine if error existed. State v. Davis (1975), 44 Ohio App.2d 335,344. A trial court commits error when it allows the prosecution to reveal a witness's prior unsworn statements to the jury unless the statements are utilized within one of the few allowable circumstances. Dayton v. Combs (1993), 94 Ohio App.3d 291,295-306. The prosecution may reveal the contents of a witness's prior unsworn statements to refresh the witness's recollection, impeach the witness, or admit the statement as evidence under one of the exceptions or exclusions to the hearsay rule. Id.
We conclude that appellee's use of the prior unsworn statements was not proper under Evid.R. 612, which allows an attorney to refresh a witness's recollection. An attorney may not attempt to refresh a witness's recollection by reading prior unsworn statements verbatim to the witness in front of a jury and asking repeatedly if he or she remembered making those statements. Id. at 298. Additionally, we determine that appellee's use of the prior unsworn statements was not proper under Evid.R. 607. Generally, an attorney is unable to impeach his or her own witness absent a showing of surprise and affirmative damage. Evid.R. 607.
Surprise exists if an attorney's witness provides testimony that is materially inconsistent with his or her prior written or oral statements and if the attorney did not have reason to believe that the witness would provide inconsistent testimony.Combs, at 299. Affirmative damage is established only if the witness testifies to facts that contradict, deny, or harm the calling party's trial position. Id. Arguably appellee was not surprised by Ball's testimony. Before Ball was called to testify, Ball's attorney informed appellee that Ball intended to assert his Fifth Amendment privilege and not testify as appellee had expected. However, even if the state showed surprise, we conclude that Ball's testimony did not provide affirmative damage. Ball did not testify to any facts that contradicted, denied or harmed appellant's position. Ball merely testified either that he could not remember making the previous statements or pled his Fifth Amendment privilege. Therefore, appellee was unable to impeach Ball with his prior unsworn statements.
Appellee asserts that it was able to impeach Ball because it was under the impression that Ball became the trial court's witness. However, we find nothing in the record that reveals that Ball became the court's witness. Rather, the record shows that Ball remained appellee's witness.
Furthermore, we conclude that appellee's use of Ball's prior unsworn statements was not proper under Evid.R. 803 or 804, which contain exceptions to the hearsay rule. Pertinent to this case is the recorded recollection exception under Evid.R. 803(5). In order to admit a statement into evidence under Evid.R. 803(5), a party must establish that: (1) the witness has a lack of present recollection of the recorded matter; (2) the recorded recollection was made at a time when the matter was fresh in the witness's memory; (3) the recorded recollection was made or adopted by the witness; and (4) the recorded recollection correctly reflects the prior knowledge of the witness. Id. at 300. In this case, appellee needed to establish the requisite foundational requirements to reveal Ball's prior unsworn statements to the jury under Evid.R. 803(5). Specifically, appellee failed to have Ball establish that the statements he made on the video and audiotapes constitute an accurate reflection of his prior knowledge. Had appellee established the requisite foundation under Evid.R. 803(5), the trial court would not have erred in allowing the jury to hear Ball's prior unsworn statements.
Finally, we conclude that the trial court was unable to allow the jury to hear Ball's prior unsworn statements by utilizing the hearsay exclusions in Evid.R. 801. Evid.R. 801(D)(1) controls the admission of prior statements given at trial or a hearing and subject to cross-examination. In this case, Ball's statements were given to the police in the course of their investigation and were not subject to cross-examination. Evid.R. 801(D)(2) provides for the admission of prior statements by a party-opponent. Ball is not a party-opponent in this case.
Therefore, we conclude that Ball's prior unsworn statements constituted inadmissible hearsay. As such, we hold that the trial court erred by allowing the jury to hear appellee's questions that revealed the contents of Ball's prior unsworn statements.
After a reviewing court determines that error existed in the criminal trial, the reviewing court determines whether the trial court cured the error by providing any curative instructions. Davis, at 345. In this case, appellant asserts that the trial court's admonition to the jury to disregard all questions and responses in relation to Ball's prior unsworn statements was insufficient and did not cure the error of allowing the jury to hear the statements. We agree.
In criminal cases, where the trial error constitutes the revealing of highly inflammatory material, a jury instruction to disregard the material may not be sufficient to cure the error. Id. at 345, citing Bruton v. United States (1968),391 U.S. 123, 88 S.Ct. 1620. As noted above, the trial court erred by allowing the jury to hear appellee's questions that contained Ball's prior unsworn statements. Appellee brought before the jury Ball's prior unsworn statements that contained appellant's confession of murdering Jones. Additionally, appellee's questions revealed Ball's prior unsworn statements containing appellant's description of why and how he murdered Jones. As such, we find that the questions revealing appellant's confession and vivid detail of the murder and motive were highly inflammatory. The objectionable material went to the ultimate issue of the case and was revealed to the jury in a concise and detailed manner. Accordingly, we find that it was unlikely that the jury disregarded the error despite the trial court's curative instruction.
Once the reviewing court finds trial error and decides that a curative instruction did not cure the error, the reviewing court determines whether the error is "harmless error" or "prejudicial error." Davis, at 345. If the error is prejudicial, the reviewing court must reverse the conviction and order a new trial. Id. at 349. In this case, appellant asserts that the trial court committed reversible error by allowing the jury to hear Ball's prior unsworn statements by way of appellee's direct examination. We agree.
In criminal cases, errors are categorized as constitutional error and non-constitutional error. Id. at 346. The non-constitutional standard applies when errors in a criminal trial do not relate to a violation of the accused's federal constitutional rights. Id. A non-constitutional error in the trial of a criminal case is harmless if there is other substantial non-disputed evidence to support a guilty verdict.Id. at 347. If there is not other substantial evidence to support the guilty verdict, then the error is prejudicial and the accused's conviction must be reversed. Id.
A federal constitutional error in the trial of a criminal case is harmless if the reviewing court concludes that beyond a reasonable doubt the error did not contribute to the accused's conviction. Id. at 346, citing Harrington v.California (1969), 395 U.S. 250, 89 S.Ct. 1726, and Chapman v.California (1967), 386 U.S. 18, 87 S.Ct. 824. If other evidence against the accused is overwhelming, the reviewing court could conclude beyond a reasonable doubt that the error was harmless and did not contribute to the accused's conviction. Davis, at 348; see, also, State v. Sage (1987), 31 Ohio St.3d 173,181, quoting State v. Williams (1983), 6 Ohio St.3d 281, 290.
However, if the other evidence of an accused's guilt is either weak or presents a close case, then it is clear that the wrongly heard material did interfere with the accused's right to a fair trial. Davis, at 349; see, also, State v. Smith
(1984), 14 Ohio St.3d 13, per curiam (examining whether the prosecution's remarks constituted prejudicial error requiring reversal of the accused's conviction). Because of the interference with the accused's constitutional rights, the reviewing court cannot find the error harmless, but must find it prejudicial and must reverse and order a new trial. Davis,
at 349.
Many courts apply the more rigorous Chapman and Harrington
standards regardless of the type of error involved. Id. at 348. Furthermore, we recognize that the injection of highly inflammatory and erroneous material in this case could be a violation of appellant's right to a fair trial as recognized under the federal constitution. Id. (Noting that the injection of inflammatory and otherwise erroneous material could be a violation of the accused's right to a fair trial under the Due Process Clause of the Fourteenth Amendment of the Federal Constitution.) Nonetheless, we conclude that the error in this case is prejudicial under either the constitutional or non-constitutional standard. We reach this conclusion because the evidence linking appellant to the murder is mostly circumstantial and presents a close case. As such, we cannot be sure that the jury did not consider Ball's prior unsworn statements upon their deliberation.
Therefore, we hold that the trial court committed prejudicial error when it allowed the jury to hear Ball's prior unsworn statements, repeated by way of appellee's direct examination of him. Accordingly, we sustain appellant's first assignment of error and the part of his third assignment of error that addresses the curative instruction given in relation to Ball's prior unsworn statements.
Lastly, we address appellant's second assignment of error and the part of his third assignment of error addressing the curative instruction as it relates to Ball's outburst in front of the jury. These assignments of error concern Ball's outburst, "You should have never threatened my baby's mother." Ball made the outburst in front of the jury while the trial court was in sidebar conference with the attorneys. The trial court instructed each juror to disregard the incident. However, appellant asserts that the jury was unable to disregard Ball's outburst despite the trial court's admonition. As such, according to appellant, the trial court erred by not granting his motion for mistrial asserted after Ball's outburst. We disagree.
A trial court may grant a mistrial sua sponte or on motion by the parties when there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.Cleveland v. Walters (1994), 98 Ohio App.3d 165, 168. The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court. Sage, at 182. The trial court's ruling in denying a motion for mistrial will not be overturned on appeal absent a showing of material prejudice.Id.
In this case, the majority of the jurors either did not accurately hear Ball's outburst or were unable to determine to whom the statement was directed. Furthermore, the outburst was fleeting and not a substantial part of the trial. Thus, we conclude that any error regarding Ball's outburst was not inflammatory and was cured by the trial court's curative instruction. See Davis, at 345, citing Bruton, at 123 (noting that, provided objectionable material is not inflammatory, a jury is presumed to follow curative instructions), see, also,State v. Loza (1994), 71 Ohio St.3d 61, 75, quoting State v.Henderson (1988), 39 Ohio St.3d 24, 33. As such, we hold that the trial court did not commit reversible error by overruling appellant's second motion for a mistrial, which was made after Ball's outburst. Accordingly, we overrule appellant's second assignment of error and the part of his third assignment of error as it relates to Ball's outburst.
In summary, we overrule appellant's second and fourth assignments of error, as well as the part of his third assignment of error as it relates to the curative instruction given after Ball's outburst. However, we sustain appellant's first assignment of error and the part of his third assignment of error that concerns the curative instruction given in relation to Ball's prior unsworn statements. Therefore, the judgment of the Franklin County Court of Common Pleas is reversed and this case is remanded to the trial court for a new trial.
Judgment reversed and remanded.
LAZARUS, P.J., and BRYANT, J., concur.