OPINION
Defendant-appellant, Vincent C. Jordan, appeals the judgment of the Franklin County Court of Common Pleas whereby appellant was convicted of one count of rape and was adjudicated a sexual predator.
In October 1998, appellant was indicted on two counts of rape, in violation of R.C. 2907.02. The charges arose from a single incident on December 2, 1997. Specifically, count one charged appellant with forcing Crystal Byers to perform fellatio on him and count two charged appellant with engaging in vaginal intercourse with Byers through force.
The first trial commenced on September 14, 1999, but ended in a mistrial when the jury was unable to reach a verdict. Subsequently, plaintiff-appellee, the state of Ohio, brought a second indictment against appellant, pursuant to R.C. 2907.02(A)(1)(c), which criminalizes sexual conduct when the "other person's ability to resist or consent is substantially impaired because of a mental or physical condition." As recognized by the trial court at the second trial, Byers has Down's Syndrome.
The second trial began on January 24, 2000. The second indictment brought against appellant, pursuant to R.C. 2907.02(A)(1)(c), was dismissed on speedy trial grounds. Thus, the second trial concerned only the forcible rape charges involving vaginal intercourse and fellatio.
When appellee called Byers to testify, the trial court conducted a voirdire on Byers and determined that she was competent to testify. At the time she testified, Byers was twenty-seven years old and lived in Grandview, Ohio. She was employed at a fast-food restaurant in Columbus and usually worked in the evenings. Because she was unable to drive herself, she took a cab to work.
It was established at trial that, on the evening of December 2, 1997, appellant picked Byers up at her home to take her to work. Byers sat in the backseat of the cab. At one point, according to Byers, appellant parked the cab in a parking lot with trucks. She testified that appellant climbed into the backseat and removed her clothes. According to Byers, she did not fight appellant when he was removing her clothes because she was scared and thought appellant was going to hurt her. Next, appellant spread Byers' legs apart with his hands. Byers claimed she experienced pain when appellant spread her legs apart because she had previously undergone surgery for a hip replacement and, as well, became frightened after appellant spread her legs apart. Appellant then put his penis inside Byers' vagina. She indicated that appellant was wearing a condom. Byers also testified that she did not want to have vaginal intercourse with appellant and even tried to push him away before he put his penis in her vagina.
At the end of the sexual encounter, according to Byers, appellant told her that "it was a secret." He also stated, "I won't tell no one about it." Byers put her clothes back on and appellant proceeded to take her to work. When she arrived at work, Byers told her boss, her friend Sandra Bing, and eventually the police about the incident. Later, appellant returned to the restaurant, which put Byers into a panic. Eventually, Bing took Byers to the hospital.
Columbus Police Detective Wes Sorrell testified that, on December 2, 1997, he went to the fast-food restaurant that employed Byers to begin investigating the rape. He described Byers as being upset. According to Sorrell, one of the accompanying police officers called the cab company responsible for taking Byers to work so that the company could contact the cab driver who drove Byers to work that evening and tell him to return to the restaurant. The cab driver returned and Byers pointed at him. The driver was later identified as appellant.
Sandra Bing testified that she is employed by Goodwill as a primary residential specialist. She assists physically and mentally handicapped people in their daily living skills. In this capacity, she "managed" Byers' Grandview residence in December 1997. Bing recalled that, on December 2, 1997, she was asked to go to the restaurant that employed Byers. When Bing arrived, she saw that Byers was upset and crying.
Appellant also testified at trial; whereupon, appellant described a November 28, 1997 cab ride with Byers. According to appellant, the November 28 cab ride included Byers asking him about his marital status, whether he had been sexually involved with girls, and whether he wanted her phone number. Next, appellant described the December 2, 1997 cab ride. Appellant testified that Byers did not come out of her house until fifteen or twenty minutes after he arrived. He claimed she was shaking her hips at him as she approached the cab. Appellant also asserted that Byers started talking about her breasts and asking him if he thought they were big. Appellant told Byers not to talk in such a manner.
He then testified that he noticed Byers taking off her clothes. At this point, according to appellant, he pulled the cab over into a parking lot with tractor trailers, got out of the cab, opened the back door and asked Byers what she was doing. Appellant testified that Byers' pants and underwear were down around her knees. He claimed that Byers was laughing and that she said she wanted to "get with" him. Appellant indicated that Byers started rubbing him and mentioned that, since he had been with white girls before, she wanted him to be with her. He claimed she also gave him $50.
At that point, appellant got a condom out of the glove compartment. He unzipped his pants, put the condom on and attempted to have sexual intercourse with Byers in the back seat of the cab. Although appellant did insert his penis in her vagina, he stated the sexual activity only lasted a minute or two because he and Byers were uncomfortable. Thereafter, according to appellant, he exited the cab, told Byers to get dressed, and put the condom in a trash dumpster. According to appellant, Byers was not upset. When asked by Byers, appellant said he would not tell anyone. Appellant then asked Byers if she was going to tell anyone. She allegedly responded by saying she would not tell anyone because he was her boyfriend. Appellant told Byers that he was not her boyfriend.
Appellant proceeded to take Byers to work and testified that she appeared fine when they arrived at her workplace. Later that evening, appellant was asked to return to the fast-food restaurant. When he returned, police detectives questioned him and eventually arrested him.
Because Byers made no mention of performing fellatio on appellant, the trial court dismissed the rape charge concerning fellatio, pursuant to Crim.R. 29. The jury deliberated on the rape charge concerning vaginal intercourse and found appellant guilty of the charge. The trial court set the sentencing hearing for March 16, 2000.
At the sentencing hearing, the trial court sentenced appellant to eight years imprisonment. After pronouncing its sentence, appellant began to express his anger and was taken out of the courtroom. The trial court then conducted a sexual predator hearing and found appellant to be a sexual predator.
Appellant appeals, raising five assignments of error:
 FIRST ASSIGNMENT OF ERROR: By allowing the prosecutor excessive use of leading questions during direct examination of the victim, unduly restricting cross-examination, and by refusing to permit an alternative means of impeaching the victim's credibility based upon her prior testimony, the court below denied appellant his rights to due process and confrontation.
 SECOND ASSIGNMENT OF ERROR: Appellant's conviction was not supported by the evidence as the state failed to prove beyond a reasonable doubt that the conduct was forcible, and not consensual.
 THIRD ASSIGNMENT OF ERROR: The court's determination appellant qualifies as a sexual predator was procedurally deficient as it was conducted in his absence, without prior notice, and without affording him the opportunity to be heard, as required by R.C. 2950.09(B).
 FOURTH ASSIGNMENT OF ERROR: The judgment entry erroneously states: "The Defendant is automatically classified as a Sexual Predator pursuant to R.C. Section 2950.09(A)."
 FIFTH ASSIGNMENT OF ERROR: The evidence before the court was legally insufficient to establish that appellant was a sexual predator, subject to the lifetime registration and community notification provisions of Chapter 2950 of the Ohio Revised Code.
We begin with appellant's second assignment of error. In his second assignment of error, appellant asserts that his rape conviction is based on insufficient evidence because appellee did not prove beyond a reasonable doubt that the sexual encounter was forcible and not consensual. We disagree.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing whether a verdict is supported by sufficient evidence, an appellate court examines the evidence in the light most favorable to the prosecution and concludes whether any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, followingJackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273.
In determining whether a conviction is based on sufficient evidence, we do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus; State v. Moore
(Sept. 5, 2000), Franklin App. No. 00AP-64, unreported.
R.C. 2907.02(A)(2) defines rape and states that no person shall engage in sexual conduct with another by purposely compelling the other to submit by force or threat of force. Force and threat of force "can be inferred from the circumstances surrounding sexual conduct." State v.Schaim (1992), 65 Ohio St.3d 51, paragraph one of the syllabus. Additionally, we recognize that Byers' mental condition is relevant in examining appellant's use of force. State v. Carter (1985),29 Ohio App.3d 148, paragraph two of the syllabus (holding that, when examining use of force upon a victim, a trier of fact may consider the size and demeanor of the defendant, the likelihood of physical injury from the defendant's conduct, and any peculiar vulnerability of the victim); State v. Franklin (June 15, 1995), Franklin App. No. 94APA11-1690, unreported.
Here, Byers testified that appellant brought her to a parking lot, climbed into the backseat next to her, and removed her clothes. Byers stated that she did not fight appellant when he began to remove her clothes because she was scared and thought that appellant was going to hurt her. This sense of fear created by appellant added to the element of force used against Byers. See State v. Fowler (1985),27 Ohio App.3d 149, 154; see, also, State v. Martin (1946),77 Ohio App. 553, 554 (concluding that, "where a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape * * * when it is shown that her will was overcome by the fear or duress"). Next, appellant spread Byers' legs apart with his hands. Byers experienced pain when appellant spread her legs apart because she had recently undergone surgery for a hip replacement. Byers testified that she was once again frightened after appellant spread her legs apart. Thereafter, appellant started to insert his penis into Byers' vagina. However, Byers testified that she tried to push appellant away before penetration because she did not want to be touched in such a manner. Despite Byers' resistance, appellant proceeded to engage in vaginal intercourse with Byers. Accordingly, we conclude that the record provides sufficient evidence that appellant engaged in sexual conduct with Byers through force.
Appellant next asserts in his second assignment of error that the trial court erred in overruling his Crim.R. 29 motion for acquittal. We disagree.
Under Crim.R. 29(A), the trial court shall grant a defendant's motion for acquittal if the evidence is insufficient to sustain a conviction. The evidence is sufficient to sustain a conviction under Crim.R. 29(A) "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. In deciding whether to grant a motion for acquittal, the court must construe all evidence in a light most favorable to the prosecution. State v. Evans (1992), 63 Ohio St.3d 231, 248. In reviewing a trial court's decision to deny a motion for acquittal, "our analysis of the evidence focuses not upon its weight or credibility, which are ordinarily matters for the jury, but rather its quantitativesufficiency to establish beyond a reasonable doubt each element of the offense." State v. Kline (1983), 11 Ohio App.3d 208, 213.
Based on Byers' testimony noted above, we conclude that the trial court properly allowed the jury to deliberate on the rape charge and, thus, did not err in overruling appellant's motion for acquittal.
Lastly, in his second assignment of error, appellant asserts that his rape conviction is against the manifest weight of the evidence. Again, we disagree.
In reviewing whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror." Thompkins, at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id.
Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. (quoting State v. Martin [1983],20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence is one reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387.
Appellant contends that his conviction is against the manifest weight of the evidence because his testimony, indicating that the sexual encounter was consensual, is more credible than Byers' testimony. Appellant argues that Byers' testimony is incredible because it contains inconsistencies.
A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony. State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, unreported. Credibility determinations on conflicting testimony are issues primarily reserved to the trier of fact to be second-guessed only in the most exceptional case. In re Jerome Fisher (June 25, 1998), Franklin App. No. 97APF10-1356, unreported.
In this case, we find nothing in the record indicating that Byers' testimony should be disregarded. She unequivocally testified that she did not want to engage in vaginal intercourse with appellant and provided competent, credible testimony establishing that she was nonetheless forced to engage in the sexual activity.
Furthermore, the jury was not required to believe appellant's testimony. Appellant admitted to lying to police about the sexual encounter. Initially, appellant told police that he did not have sex with Byers. He ultimately admitted that sex occurred, but lied to police by saying he did not know where the condom was, even though he later testified at trial to disposing of the condom in a dumpster. Appellant also lied to the jury by testifying that Byers gave him $50, even though he had told police that Byers had no money.
Accordingly, we conclude that the jury did not clearly lose its way or act unreasonably when it chose to believe Byers and disbelieve appellant. As such, appellant's conviction is not against the manifest weight of evidence.
Therefore, based on the above, we overrule appellant's second assignment of error.
We next address appellant's first assignment of error. In his first assignment of error, appellant initially asserts that the trial court erred in allowing appellee excessive use of leading questions during its direct examination of Byers. We disagree.
Leading questions involve the questioner instructing the witness how to answer or putting words into the witness' mouth to be echoed back. Statev. D'Ambrosio (1993), 67 Ohio St.3d 185, 190. In this case, Byers' testimony concerning appellant raping her did not consist of a narrative, descriptive account; rather, Byers testified about the rape in piecemeal fashion by answering a multitude of questions from appellee, as noted through the following exchange:
 [APPELLEE]: ON THE DAY THAT WAS THERE A DAY WHEN [APPELLANT] WAS DRIVING THAT SOMETHING BAD HAPPENED?
[BYERS]: YEAH.
[APPELLANT'S ATTORNEY]: OBJECTION.
THE COURT: OVERRULE.
Q. * * * WOULD YOU TELL US WHAT HAPPENED THAT WAS BAD?
A. HE STARTED RAPING ME.
* * *
 Q. * * * SO I'D LIKE YOU TO TELL US WHAT HAPPENED THAT MADE YOU SAY TO PEOPLE, THAT'S WHEN HE STARTED RAPING ME.
A. UM-HUM.
Q. WHAT HAPPENED IN THE CAB?
A. I WAS IN A CAB. I GOT HURT MY [SIC] HIM.
Q. WHAT DO YOU MEAN BY THAT?
A. HE SPREAD MY LEGS APART.
Q. IS THAT RIGHT?
A. YEAH.
Q. HOW?
A. WITH HIS HANDS.
Q. SHOW US WITH YOUR HANDS. WHAT DID HE DO?
A. LIKE THIS (INDICATING). HE SPREAD THEM APART.
Q. IS THAT RIGHT?
A. YEAH.
* * *
Q. OKAY. YOU WERE WEARING PANTS OR A SKIRT?
A. PANTS.
 Q. OKAY. WERE THEY THE KIND THAT HAVE A ZIPPER ON THEM?
A. YEAH.
Q. WHO UNZIPPED THEM?
A. HE DID.
Q. * * * TELL US WHAT HAPPENED WHEN HE SPREAD YOUR LEGS.
A. IT'S KIND OF DISGUSTING, BUT I GOT TO SAY IT.
Q. THAT'S ALL RIGHT.
A. HE PUT HIS (INDICATING) INSIDE OF ME.
* * *
Q. WHAT WORD DO WE USE FOR WHAT YOU'RE POINTING TO?
A. PENIS.
* * *
Q. DID YOU WANT HIM TO PUT HIS PENIS IN YOUR VAGINA?
A. NO.
[APPELLANT'S ATTORNEY]: OBJECTION.
THE COURT: OVERRULE.
Appellee's questions essentially guided Byers through her testimony and served to help her develop testimony that she may not have otherwise provided. Indeed, during the first trial, Byers was given the opportunity to describe the sexual encounter in a narrative form. However, she was unable to develop her testimony without the aid of appellee's questions. Thus, we conclude that appellee elicited crucial testimony from Byers through a liberal use of leading questions.
Generally, leading questions should not be used on direct examination. See Evid.R. 611(C). However, the trial court has authority under Evid.R. 611(A) to exercise reasonable control over the mode of interrogation so that its presentation will be effective in ascertaining the truth. State v. Smith (1997), 80 Ohio St.3d 89, 110. Accordingly, the trial court may properly allow leading questions when "necessary to develop [the witness's] testimony." Evid.R. 611(C). In reviewing the trial court's decision to allow leading questions, our role is limited to determining whether or not the trial court abused its discretion. Ramagev. Central Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 111. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In this case, as noted above, the trial court recognized that Byers has Down's Syndrome. Moreover, through her own testimony, Byers demonstrated that she has a limited intellect and difficulty expressing herself. A trial court may properly allow leading questions on direct examination of a witness with "limited intellect." Staff Notes to Evid.R. 611(C). Similarly, the Ohio Supreme Court concluded that a trial court properly allowed leading questions on direct examination of a witness who appeared nervous and "a little slow" and "straining" with his answers. Smith, at 111. Accordingly, in this case, we conclude that the trial court did not abuse its discretion when it allowed appellee to use leading questions to elicit testimony from Byers.
Appellant also contends that the trial court committed reversible error by prohibiting his trial counsel from using Byers' testimony at the first trial to impeach her credibility. We disagree.
As noted above, during direct examination, Byers testified that she tried to push appellant away from her before he inserted his penis in her vagina. During cross-examination, appellant's trial counsel sought to impeach this statement with her testimony from the first trial, which contains no statements by Byers indicating that she tried to push appellant away from her. Appellant's trial counsel began the impeachment in the following manner:
 Q. — CRYSTAL, YOU DIDN'T SAY ANYTHING LAST TIME ABOUT TRYING TO PUSH [APPELLANT] AWAY, DID YOU?
A. YES, I DID.
Next, appellant's trial counsel referred Byers to the transcript from the first trial. However, the trial court prohibited appellant's trial counsel from continuing with the impeachment. The trial court concluded that it would be improper to impeach Byers for not testifying in the first trial to having tried to push appellant away. The court indicated that the impeachment would be improper because Byers related her account of the rape by answering a series of questions rather than conveying her account through a narration.
Specifically, the trial court stated:
 * * * I DON'T THINK IT'S FAIR FROM WHAT YOU'RE SAYING THAT IN TELLING HER STORY SHE NEVER MENTIONED FORCE THAT YOU CAN THEN TRY TO IMPEACH HER BY NOT HAVING MENTIONED FORCE IF, IN FACT, IT WASN'T ELICITED FROM HER WHEN SHE TOLD HER STORY BECAUSE HER STORY WAS ELICITED IN BITS AND PIECES JUST EXACTLY THE WAY IT WAS ELICITED HERE BECAUSE WE'RE DEALING WITH SOMEBODY WHO DOESN'T' TELL THINGS START TO FINISH. SO, IN OTHER WORDS, WE'RE NOT GOING THERE WITH THAT.
As a witness deemed competent to testify, Byers was subject to impeachment. See Evid.R. 607(A) and (B). Generally, a witness may be impeached with his or her prior inconsistent statement. Evid.R. 613. Ohio law recognizes "contradiction by reference to a material fact omitted in a witness's prior or subsequent statement." Kline, at 212. Thus, a witness may be impeached for testifying to previously omitted facts that would have been "natural" and "reasonable" for him or her to assert. Id.; see, also, Jenkins v. Anderson (1980), 447 U.S. 231, 239
(recognizing that witnesses have traditionally been allowed to be impeached by their previous failure to state a fact in circumstances that the fact "naturally" would have been asserted).
In this case, we conclude that, if Byers did try to push appellant away during the rape, this was a material fact that would have been natural and reasonable for her to assert during the first trial. Even though, during the first trial, Byers testified about the rape in a piecemeal fashion in response to leading questions asked by appellee, she was provided with an opportunity to relate the "pushing" fact. During the first trial, as in the second trial, appellee asked questions covering all aspects of the sexual encounter. The "pushing" fact concerns an essential part of the sexual encounter and naturally and reasonably would have been mentioned in response to any questions asked concerning the rape. Byers omitted the "pushing" fact in the first trial, but chose to relate the fact in the second trial. Thus, appellant's trial counsel was entitled to impeach Byers on the inconsistent testimonies by confronting her with the previously omitted "pushing" fact. As such, the trial court erred in restricting cross-examination in this manner.
The right to cross-examine witnesses is guaranteed by Cthe Confrontation Clause of the Sixth Amendment to the United States Constitution. Pennsylvania v. Ritchie (1987), 480 U.S. 39, 51. Therefore, we must determine whether the trial court's error constitutes harmless error beyond a reasonable doubt, assuming potential damaging effect of the prohibited cross-examination were fully realized. Oldenv. Kentucky (1988), 488 U.S. 227, 232-233, citing Chapman v. California
(1967), 386 U.S. 18. In reviewing whether the trial error constitutes harmless error, we consider the importance of the witness's testimony in appellee's case, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, and the extent of cross-examination otherwise permitted. Delaware v. VanArsdall (1986), 475 U.S. 673, 684. As well, we consider the overall strength of appellee's case. Id. Thus, if evidence against the defendant is overwhelming, the reviewing court could conclude beyond a reasonable doubt that the error was harmless and did not contribute to the defendant's conviction. See State v. Davis (1975), 44 Ohio App.2d 335,344.
In this case, Byers' testimony was pivotal in establishing that appellant raped her. Although the trial court prohibited appellant's trial counsel from impeaching Byers' claim that she tried to push appellant away during the sexual encounter, appellant's trial counsel was otherwise given substantial latitude to cross-examine Byers. Appellant's trial counsel was allowed to ask many questions challenging her version of the sexual encounter and her ability to recall and accurately testify about the encounter. As an example, appellant's trial counsel was allowed to use the transcript from the first trial to confront Byers about alleged inconsistent testimony concerning whether she told appellant that her panties were torn before the sexual encounter. Thus, the above trial error was not pervasive and did not completely impede appellant's trial counsel from attacking Byers' credibility and ability to testify.
Furthermore, even realizing potential damaging effect of the prohibited impeachment and, thus, discounting Byers' testimony that she tried to push appellant away, Byers provided an overwhelming amount of evidence supporting appellant's rape conviction. Initially, as previously stated in this opinion, Byers' mental condition is relevant in examining appellant's use of force. See Carter, at paragraph two of the syllabus;Franklin. According to Byers, appellant parked the cab on his own initiative and climbed into the backseat next to her. Next, appellant removed Byers' clothes. Byers stated that she did not fight appellant when he began to remove her clothes because she was scared and thought that appellant was going to hurt her. As we stated above, the sense of fear created by appellant added to the element of force used against Byers. See Fowler, at 154; Martin, at 554. Appellant proceeded to spread her legs apart with his hands, which, as noted above, caused Byers to experience pain. Furthermore, Byers was again frightened after appellant spread her legs apart. Eventually, appellant inserted his penis into Byers' vagina; however, according to Byers, she did not want to engage in such sexual activity with appellant.
Therefore, we conclude, beyond a reasonable doubt, that the trial court's decision to prohibit appellant's trial counsel from impeaching Byers' "pushing" testimony constitutes harmless error. The harmless error does not warrant a reversal of appellant's rape conviction. SeeState v. Brown (1992), 65 Ohio St.3d 483, 485.
As such, based on the above, we overrule appellant's first assignment of error.
Next, we address appellant's third assignment of error, which concerns the sexual predator hearing. As noted above, the trial court found appellant to be a sexual predator. However, appellant asserts that the trial court's finding is erroneous because the sexual predator hearing was procedurally deficient. For example, appellant asserts, and appellee agrees, that the hearing occurred without requisite notice. We agree.
R.C. 2950.09(B)(1) provides that, before holding a sexual predator hearing, the trial court "shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, and location of the hearing." The notice requirement is mandatory. State v. Gowdy (2000), 88 Ohio St.3d 387, 399. Absent compliance with the mandatory notice provision, the defendant's classification as a sexual predator must be vacated and the matter remanded to the trial court for a sexual predator hearing with proper advance notice of the hearing. Id.
In this case, the transcript and appellate record do not show that notice was given for the sexual predator hearing. As noted above, after the jury found appellant guilty of rape, the trial court set the sentencing hearing for March 16, 2000; however, the trial court made no mention of a sexual predator hearing. Notice of the sentencing hearing is not sufficient notice of the sexual predator hearing. Id.
Accordingly, we sustain appellant's third assignment of error as it relates to the lack of notice for the sexual predator hearing.
Because of our determination on the notice issue, we render moot appellant's third assignment of error as it relates to the sexual predator hearing being conducted after the trial court pronounced its sentence, and as it relates to appellant not being present at the sexual predator hearing. App.R. 12(A)(1)(c). We also render moot appellant's fourth and fifth assignments of error, which concern other aspects of the sexual predator determination. App.R. 12(A)(1)(c).
In summary, we overrule appellant's first and second assignments of error. We render moot appellant's third assignment of error as it relates to appellant not being present at the sexual predator hearing and to the trial court conducting the hearing after pronouncing appellant's sentence. We further render moot appellant's fourth and fifth assignments of error. However, we sustain appellant's third assignment of error as it relates to the trial court failing to provide notice for the sexual predator hearing. As such, we reverse the trial court's judgment on the sexual predator determination and remand this cause to the trial court for a sexual predator hearing with proper notice issued to the parties. The remainder of the trial court's judgment is affirmed.
 ______________________ KENNEDY, J.
LAZARUS and BROWN, JJ., concur.