CITY OF COLUMBUS, Appellee,

v.

HENRY, Appellant.

[Cite as *Columbus v. Henry* (1995), 105 Ohio App.3d 545.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APC02–159.

Decided Aug. 29, 1995.

*Ronald J. O'Brien,* City Attorney; *David M. Buchman,* City Prosecutor, and *Rebecca Gooch,* for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *John W. Keeling,* for appellant.

---

TYACK, Judge.

On October 12, 1994, William M. Henry III was arrested and charged with two traffic offenses: having no operator's license, in violation of Columbus City Code Section ("C.C.") 2135.01, and operating his vehicle at too slow a speed, in violation of C.C. 2133.04. In addition, Columbus Division of Police Officer Barry Kirby caused the issuance of further complaints charging Henry with aggravated menacing in violation of C.C. 2303.03, assault in violation of C.C. 2303.01, and resisting arrest in violation of C.C. 2315.01. Henry was jailed and posted bond the following day. More pertinent facts are set forth below in our discussion of the first assignment of error.

Following a hearing, the trial court overruled motions filed by defense counsel seeking dismissal of the various charges. In an entry dated January 6, 1995, the court indicated as follows:

" * * * [M]otion to dismiss for lack of probable cause overruled; motion to dismiss for lack of reasonable suspicion to stop is overruled because the deft. was voluntarily stopped prior to officer coming on to the scene."

A jury trial commenced on January 9, 1995. An entry dated the same day indicates that the no operator's license charge was dismissed upon motion of the assistant city prosecutor. At the close of the city's case, the trial court sustained defense counsel's Crim.R. 29 motion for a judgment of acquittal as to the slow speed charge. Accordingly, only three remaining charges were submitted to the jury.

The jury acquitted Henry of the aggravated menacing charge but found him guilty of resisting arrest. The trial court sentenced Henry to thirty days in jail, suspended the sentence, and placed Henry on one year's probation. The court also imposed a fine of $200 and ordered Henry to pay costs totaling $563. The jury was unable to agree on a verdict as to the assault charge; at the request of the city, the assault charge was ultimately dismissed.

Henry ("appellant") has timely appealed, assigning two errors for our consideration:

"Assignment of Error Number One:

"The trial court erred when it entered a judgment of conviction against the defendant when the evidence was insufficient to sustain the conviction and the conviction was against the manifest weight of the evidence presented when the prosecution failed to prove that the arrest was lawful and supported by probable cause, that proper notice had been given of the cause for the arrest, and that the defendant understood that he was under arrest. The court further erred by entering the conviction when the evidence established that excessive and unnecessary force had been used which the defendant was entitled to resist.

"Assignment of Error Number Two:

"The trial court erred when it failed to instruct the jury on all matters of law necessary to render a proper verdict on the charge of resisting arrest."

By his first assignment of error, appellant argues that the trial court erred in entering a judgment of conviction because the evidence was not sufficient to sustain a guilty verdict. He further submits that the verdict was against the manifest weight of the evidence.

In *State v. Conley* (Dec. 16, 1993), Franklin App. No. 93AP–387, unreported, 1993 WL 524917, this court examined the standards of review for criminal cases challenging the sufficiency and weight of the evidence. We explained the test to be applied in reviewing the sufficiency of the evidence as follows:

"The test to be used in reviewing the sufficiency of the evidence to support a criminal conviction is set forth in the second paragraph of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259 [574 N.E.2d 492]. Upon such issue, determining whether, as a matter of law, the evidence is sufficient to support a conviction, the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * * "

However, as we explained in *Conley,* the test for reviewing the manifest weight of the evidence is slightly different:

"When the manifest weight of the evidence is the issue, the evidence is not construed most strongly in favor of the state. Instead, the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. See *State v. DeHass* (1967), 10 Ohio St.2d 230 [39 O.O.2d 366, 227 N.E.2d 212]. This test is stated in the second paragraph of the syllabus of *State v. Eskridge* (1988), 38 Ohio St.3d 56 [526 N.E.2d 304], as being 'a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an

offense have been proven beyond a reasonable doubt.' See, also, *Elyria v. Tress* (1991), 73 Ohio App.3d 5 [595 N.E.2d 1031]." See, also, *State v. Shamblin* (Mar. 31, 1994), Franklin App. No. 93APA07–965, unreported, 1994 WL 109685.

Appellant was convicted of resisting arrest, in violation of C.C. 2315.01(a), which reads:

"No person, recklessly or by force, shall resist or interfere with a *lawful* arrest of himself or another." (Emphasis added.)

The crux of appellant's argument on appeal is that he was not *lawfully* arrested and, therefore, he could not be properly convicted of resisting such unlawful arrest. Based upon our review of the record, as detailed below, we agree.

The testimony of Officer Barry Kirby alone establishes the fact that appellant was unlawfully arrested. His recollection of certain events surrounding his arrest of appellant, which events ultimately culminated in the repeated macing of and multiple injuries to appellant, differs in pertinent respects from that of appellant, other defense witnesses, and other police officers. However, for purposes of our review, we need only resolve the issue of whether or not the warrantless arrest of appellant was properly based upon probable cause.

Officer Kirby was en route to a disturbance call at approximately 3:30 p.m. on October 12, 1994. He noticed appellant's pickup truck slowing traffic on Ohio Avenue, so the officer parked his cruiser right behind the truck. Appellant was sitting in his truck, talking with a woman on a bicycle. Kirby became suspicious when he observed a "hand-to-hand transaction" in the form of the woman "exchanging * * * or attempting to exchange [a] tissue" with appellant. Based upon the officer's "training and experience," he concluded that a drug deal was taking place.

Officer Kirby got out of his cruiser and approached the suspect woman whom he had observed with the tissue because "generally the person with the tissue * * * is the one in control of the narcotics." When he demanded and inspected the tissue, his search revealed no narcotics.

Officer Kirby's attention was "quickly withdrawn from the female" when appellant said, "We're not selling crack cocaine," and called the officer a "racist pig." According to Officer Kirby, appellant had got out of his truck, shouted profanities at the officer, and "insinuated that [Kirby] was doing something wrong."

Officer Kirby testified that he then asked appellant if he "could please see his driver's license." He believed that appellant responded, "I don't have one on me." Citing "officer safety reasons and convenience," the officer explained standard procedure under these circumstances to include escorting the subject to the cruiser, patting the subject down for weapons, and running a "status check"

on the computer to verify whether the subject has a valid driver's license. When appellant refused the officer's "instruct[ions] to have a seat" in the cruiser, the officer placed appellant in a "transport wristlock." Appellant "yanked away" and grabbed the officer's arm. Officer Kirby then sprayed appellant in the face with mace. When asked why he maced appellant, the officer testified:

"Because at that time *he's under arrest based on the fact* that he's orally communicated to me *that he does not have a license on him, which is an offense.*" (Emphasis added.)

When asked if the officer had informed appellant that he was under arrest, Officer Kirby claimed that he had, adding that he told appellant to "stop resisting." A struggle to the ground ensued, and the officer maced appellant a second time. In order to subdue appellant on the ground and render him unable to move, the officer applied pressure to a pressure point on appellant's mandibular joint. Backup officers, including Keith Kline, arrived soon to assist Kirby. Appellant was ultimately handcuffed and placed in a paddy wagon.

Officer Kirby received immediate medical attention to flush out his eyes from the "backspray" he received when he twice maced appellant. Appellant, who sustained two direct blasts of mace in his face, received no such immediate medical attention. After the officers completed necessary paperwork in a nearby church parking lot for over one hour, appellant was eventually transported to a local hospital for treatment and finally to jail.

On cross-examination, Officer Kirby acknowledged that even after he verified that appellant was indeed a validly licensed driver, he issued him a ticket anyway. On the ticket,[1] Officer Kline described appellant's "no ops" offense as follows: "MR. HENRY WAS OPERATING THE ABOVE VEHICLE WITH OUT [*sic*] AN OHIO DRIVER[']S LICENSE ON HIS PERSON OR NEAR AT HAND."

According to Officer Kirby, appellant was arrested for allegedly violating C.C. 2135.01, which provides, in pertinent part:

"(a)(1) No person * * * shall operate any motor vehicle * * * unless such person, upon application, has been licensed as an operator * * * by the Ohio Registrar of Motor Vehicles * * *."

The requirement to *display* one's driver's license is governed by C.C. 2135.06, which reads:

"The operator * * * of a motor vehicle shall display his license, *or furnish satisfactory proof that he has such license,* upon demand of any peace officer * * *. When a demand is properly made *and the operator * * * has his license*

---

1. For reasons which are not apparent, Officer Kline, one of the backup officers who assisted Officer Kirby, signed the traffic tickets as the "issuing-charging law enforcement officer."

*on or about his person,* he shall not refuse to display such license. Failure to furnish satisfactory evidence that such person is licensed * * * *when such person does not have his license on or about his person* shall be prima-facie evidence of his not having obtained such license." (Emphasis added.)

■ Citing no authority, counsel for the city summarily argues that "it is a violation of [C.C.] 2135.06 * * * [to fail] to display a driver's license upon the demand of any peace officer." Neither provision quoted above nor any case law supports such an assertion. Reading the above provisions in their entireties and *in pari materia* clearly establishes the officer's (and appellee's counsel's) mistake of law; it is *not* a crime for an Ohio resident to drive in Columbus without having his or her operator's license on his or her person. See *Columbus v. Harris* (Nov. 26, 1976), Franklin App. No. 76AP–750, unreported. On the contrary, C.C. 2135.06 explicitly contemplates the common situation in which the driver does *not* have his or her license in his or her immediate possession and allows the driver the opportunity to provide information by which the officer may verify licensure.

The officer's mistaken belief that appellant's conduct was in violation of the law did not create probable cause to arrest appellant. Since appellant was not lawfully arrested, he could not properly be convicted of resisting such an arrest. See *State v. Johnson* (1982), 6 Ohio App.3d 56, 6 OBR 268, 453 N.E.2d 1101; *State v. Miller* (1990), 70 Ohio App.3d 727, 591 N.E.2d 1355. Thus, appellant's conviction was based upon evidence which was insufficient as a matter of law and, further, was against the manifest weight of the evidence. Therefore, the first assignment of error is sustained to that extent.

Our resolution of the first assignment of error renders the second assignment of error moot. See App.R. 12.

Having sustained the first assignment of error, the judgment of the trial court is reversed and this cause is remanded with instructions to enter a judgment of acquittal as to the resisting arrest charge.

*Judgment reversed*
*and cause remanded.*

LAZARUS, J., concurs.

PETREE, J., dissents.

PETREE, Judge, dissenting.

Being unable to agree with the majority opinion, I respectfully dissent.

The test for determining whether a police officer has probable cause for making a warrantless arrest of a suspect is "whether at that moment [of the arrest] the facts and circumstances within [the officer's] knowledge and of which

[he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145. Thus, the issue before this court is whether Officer Kirby had probable cause to arrest appellant, based on the facts and circumstances before him at the moment of the arrest.

When Officer Kirby asked appellant for his driver's license, appellant informed him that he did not have his license with him. The majority states that "it is *not* a crime for an Ohio resident to drive in Columbus without having his or her operator's license," and cites this court's decision in *Columbus v. Harris* (Nov. 26, 1976), Franklin App. No. 76AP–750, unreported, for this proposition. I agree with this statement of the law; however, the majority fails to include the next sentence of *Harris* in its analysis. That sentence states, "[h]owever, failure to furnish satisfactory evidence of being licensed is prima-facie evidence of the operator's not having obtained such license." *Id.* C.C. 2135.06, which governs the display of one's driver's license, provides that failure to furnish evidence of a driver's license upon the demand of a police officer is prima facie evidence of not having obtained such license. Specifically, C.C. 2135.06, provides:

"Failure to furnish satisfactory evidence that such person is licensed * * * *when such person does not have his license on or about his person* shall be prima-facie evidence of his not having obtained such license." (Emphasis added.)

In the instant case, appellant failed to furnish satisfactory evidence that he was a licensed driver. Consequently, this failure provided Officer Kirby a reasonable basis to believe that appellant may have been operating his automobile without a driver's license, in violation of C.C. 2135.01. The fact that appellant may have at some later time produced a valid driver's license, or provided satisfactory evidence of licensing, does not vitiate the fact that at the moment of the arrest, appellant's failure to furnish satisfactory evidence of licensing was sufficient to warrant Officer Kirby in believing that appellant was operating his automobile without a valid driver's license in violation of C.C. 2135.01. Thus, based on the facts and circumstances before him at the time, Officer Kirby had probable cause to arrest appellant for a violation of C.C. 2135.01.

Because Officer Kirby had probable cause to arrest appellant for violating C.C. 2135.01, appellant could be properly convicted of resisting arrest in violation of C.C. 2315.01(a).