OPINION
Defendant-Appellant, Kathy L. Baire, appeals the February 20, 2001 judgment entry of the Franklin County Court of Common Pleas, convicting her of theft in violation of R.C. 2913.02 and ordering restitution in the amount of $34,800. For the following reasons, we affirm in part, reverse in part, and remand for resentencing.
On July 18, 2000, appellant was indicted on one count of theft, a felony in the fourth degree. A jury trial occurred on December 14, 2000, in which appellant did not testify. At trial, Amy Thompson, Supervisor of United Dairy Farmers ("UDF"), Jerry McMenemy, Security Manager of UDF, and Ronald Custer, Burglary Detective of the Columbus Division of Police, testified on behalf of appellee. The following facts are taken primarily from the testimony of Amy Thompson, and statements appellant made to Jerry McMenemy and Ronald Custer that were admitted at trial.
Appellant worked as a first assistant manager at UDF in Columbus, Ohio. As first assistant manager, appellant was required to work forty-five hours a week; five hours of which were overtime hours. When the store manager was not there, appellant was in charge of the store and was required to perform all of the manager's duties.
UDF's company policy required that store deposits had to be taken to the bank every day. Night deposits were not recommended. However, if a manager could not make it to the bank during bank hours, the deposit would then have to be made in the bank's night deposit drop. UDF further required that, if a manager was unable to get to the bank to make a deposit, the manager was required to call a supervisor and inform him or her that the daily deposit had not been made.
Appellant worked mainly first shifts. Therefore, she was responsible for stocking, placing orders, doing paperwork, and counting the previous day's cash and sales. Once all the money was counted and the money in the safe was balanced, appellant was required to fill out a deposit slip, place it in a deposit bag and immediately take it to the bank. UDF's company policy was that the money had to be transported to the bank in a locked bank bag. However, UDF banked at Firstar, and Firstar used non-reusable plastic night drop bags, which had adhesive tape that was used to secure the bag.
On February 8, 2000, appellant came into work, prepared the deposit from the previous day, took the deposit with her, and placed it in the trunk of her car. Appellant did not make the deposit at Firstar for that day. On February 9, 2000, appellant did the same thing. She prepared the deposit from the cash and sales from February 8, 2000, put the deposit in the deposit bag, placed it in the trunk of her car, but did not make the deposit at Firstar. This pattern went on for the next two days. Appellant had deposits totaling over $30,000 from February 7, 8, 9 and 10, in the trunk of her car. Not once did appellant call her supervisor to tell her that she was unable to make any of the deposits.
On February 12, 2000, appellant came to work and started figuring the deposits from the previous day. Appellant decided that, before it got too late, she needed to go to the bank to get change for the store. She left the deposit for February 11, 2000 at the store, headed to the bank, and decided that she would make one deposit that was in the trunk of her car. She opened her trunk and grabbed the deposit from February 9, 2000, and deposited it at Firstar. She left the deposits from February 7, 8 and 10, in the trunk of her car. Appellant stated that she only made one deposit because it was store policy to not make more than one deposit at a time. Appellant returned to UDF, completed her deposit from February 11, 2000, and finished her shift for the day. At this point, appellant decided that she would make the rest of the deposits. Before leaving the store, appellant stuffed the February 11 deposit in her leather coat sleeve and purchased gas. Appellant went to the trunk of her car, took the deposit from her coat sleeve and the three deposits from the trunk, stuffed them in a large plastic UDF grocery bag, and put all four deposits back in her leather coat sleeve, and placed her coat in the trunk of her car. At this point, she again had four deposits in the trunk of her car; deposits from February 7, 8, 10 and 11.
Appellant headed to a Firstar bank located at a Kroger grocery store close to her home. Appellant got out of her car, went to the trunk, opened the trunk, grabbed her leather coat, threw it over her forearm, and proceeded to walk into the bank. When she got close to the door of the bank, appellant reached in her leather coat sleeve for the deposits, and discovered that all the money was gone. Appellant stated all that was left in her coat sleeve was the large plastic UDF grocery bag. Appellant retraced her steps, looked in her trunk, but could not find the money. Appellant left the bank, went home, and called UDF and Firstar to see if either location had the deposits. Both UDF and Firstar informed appellant that they did not have the deposits. Appellant never called the police or her supervisor to report the money missing.
Appellant reported to work on the next day and began to "float" money around to make up for the money that she stated she lost. Appellant used her own money, money from the safe, and money that came into the store that particular day to try to cover the deposits. For about a week, appellant floated the funds, but was unsuccessful in her efforts to make up for the four deposits that she indicated she lost. On Monday, February 21, 2000, the accounting department of UDF notified Supervisor Amy Thompson and informed her that there was a problem with the deposits from the store. Upon further investigation, it was determined that over $34,000 was missing in store deposits.[1] On February 23, 2000, UDF Security Manager Jerry McMenemy interviewed appellant and, shortly thereafter (sometime in March 2000), appellant was also interviewed by Ronald Custer, Burglary Detective of the Columbus Division of Police. During both interviews, appellant stated that she was responsible for the deposits, admitted to having the deposits, and stated that she had lost the deposits.
On December 15, 2000, the jury found appellant guilty of theft. On February 16, 2001, the trial court sentenced her to a definite term of eight months incarceration and ordered her to pay restitution in the amount of $34,800 to the victim, UDF.
It is from this entry of sentence that appellant appeals, raising the following two assignments of error:
APPELLANT'S FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN NOT GRANTING A JUDGMENT OF ACQUITTAL AS TO COUNT ONE FOR THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
APPELLANT'S SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN ORDERING RESTITUTION IN THE AMOUNT OF THIRTY-FOUR THOUSAND, EIGHT HUNDRED DOLLARS ($34,800.00) TO UNITED DAIRY FARMERS.
In her first assignment of error, appellant argues the evidence at trial was insufficient to support a conviction and that her conviction was against the manifest weight of the evidence. As an initial matter, there is no indication in the record that appellant moved for a judgment of acquittal pursuant to Crim.R. 29. Accordingly, she cannot challenge the sufficiency of the evidence underlying her conviction on appeal. State v. Roe (1989), 41 Ohio St.3d 18, 25. Nonetheless, in the interest of justice, we will address appellant's first assignment of error, as we find that appellant's conviction is amply supported by sufficient evidence and is not against the manifest weight of the evidence.
Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, supra, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for defendant. See Thompkins, supra, at 387.
In determining whether a conviction was against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986), 33 Ohio App.3d 339, 340. Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, supra, at 387. In so doing, the court of appeals sits as a "thirteenth juror" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, supra, at 387.
Here, appellant was convicted of theft in violation of R.C. 2913.02, which states:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.
(B)(1) Whoever violates this section is guilty of theft.
In this case, in order to secure a conviction for theft, appellee had to prove beyond a reasonable doubt that appellant had the purpose to deprive UDF of its property and knowingly exerted control over the deposits without UDF's consent. Appellant contends that there was a lack of evidence that she stole the money. Appellant further contends that, since she admitted she did not steal the money, but, rather, that she lost it, and because appellee failed to produce any evidence to call her veracity into question, appellant's actions only violated store policy and did not rise to the offense of theft.
Additionally, appellant further asserts that appellee had to present evidence of extravagant spending on appellant's part to prove the offense of theft. Appellant's assertion is misplaced. Upon our review of the entire record, we find substantial evidence upon which the jury reasonably could conclude that appellee established, beyond a reasonable doubt, the essential elements of the offense of theft. Mr. Custer testified that he searched the trunk of appellant's car and found that the trunk contained no holes that would allow the deposits to shift or slide across the trunk and become dislodged. Although appellant's job required her to handle the daily store deposits, evidence was introduced at trial to support the inference that appellant purposefully deprived UDF of its property by knowingly exerting and obtaining control over the daily deposits at the point she took them out of the store, placed them in the trunk of her car, and did not immediately take them to the bank to deposit them. Appellant, went beyond the scope of any express or implied consent of UDF or its supervisor by holding onto the deposits and not notifying a manager or supervisor that she was unable to make the daily deposits as required by the Funds Handling Procedure. In addition, testimony was presented to show that appellant's statements to Ronald Custer and Jerry McMenemy, at the time of her interviews, were inherently contradicting. Ronald Custer testified that appellant indicated she only deposited the February 9, 2000 deposit because it was store policy to make only one deposit at a time. However, Jerry McMenemy testified that appellant stated that it would have taken at least forty-five minutes for her to wait in line to make all four deposits, and she did not want to wait. Ironically, later that day when appellant's shift was over, she decided to make another trip to the bank to make all four deposits, which included the deposits from February 7, 8, 10 and 11.
For the foregoing reasons, we find that there was sufficient evidence to support appellant's conviction for theft under R.C. 2913.02. Moreover, we further find that appellant's conviction is not against the manifest weight of the evidence. As a result, appellant's first assignment of error is not well-taken and is overruled.
In her second assignment of error, appellant challenges the judge's entry ordering restitution in the amount of $34,800 to the victim, UDF for a non-violent crime.
Even though the March 2000 amendment to R.C. 2929.01 modified the definition of "economic loss" to include any economic detriment suffered by a victim as a result of the commission of a felony, appellant urges that the crime for which she was convicted occurred prior to such amendment, therefore, she should not retroactively be held liable under the new standard. R.C. 2929.18(A)(1) permits a trial court to order restitution for "economic loss." Prior to March 2000, R.C. 2929.01(N) [now R.C. 2929.01(M)] defined "economic loss" as "criminally injurious conduct" which was itself defined in former R.C. 2743.51 as "conduct that imposes a substantial threat of personal injury or death." These former statutes limited the imposition of a restitution order to crimes involving violence or the threat of violence. State v. Ward (1999),135 Ohio App.3d 76, 80-81. In interpreting the relevant statutory language and statutory history of the former statute, this court concluded that restitution was a statutorily valid sanction only to compensate victims for crimes that "pose the threat of personal injury or death." Id. at 81.
Thus, the only remaining question is whether appellant's conduct fell under the former statute or the current one. Upon review of the record and the applicable facts, we find that the trial court did not have the authority to order appellant to pay restitution to UDF. Given that the conduct in question occurred in February 2000, before the effective date of the amended sentencing statute, a retroactive application of R.C.2929.01 would run afoul of Section 10, Article I, United States Constitution and Section 28, Article II, Ohio Constitution. State v. Diaz (Aug. 31, 2001), Fulton App. No. F-00-024, unreported. Accordingly, appellant's second assignment of error is sustained.
For the foregoing reasons, appellant's first assignment of error is overruled, and appellant's second assignment of error is sustained. The judgment of the trial court is reversed as to appellant's sentence only, and this cause is remanded to the Franklin County Court of Common Pleas for resentencing.
TYACK and KENNEDY, JJ., concur.
[1] The following deposits had not been made: the deposit from February 7, 2000, was in the amount of $9,836.01; the deposit from February 8, 2000, was in the amount of $9,372.32; the deposit from February 10, 2000, was in the amount of $6,061.43; and the deposit from February 11, 2000, was in the amount of $9,596.51. The deposit from February 9, 2000, which appellant did make, was the smallest deposit of the group, totaling $5,481.45.