OPINION
Defendant-appellant, Jimmy Lee Williams, appeals from the January 30, 2001 judgment of the Franklin County Court of Common Pleas finding him guilty of burglary in violation of R.C. 2911.12(A)(1), and sentencing him to a three-year period of community control under intense supervision. For the following reasons, we affirm.
The case arose out of an incident that occurred on the evening of February 26, 2000, and the early morning hours of February 27, 2000. Appellant's downstairs neighbors, Richard and Sally Foster, invited appellant and his girlfriend, Andrea Allen, to their apartment for a barbecue supper. At first, appellant had some reservations about accepting the invitation because Richard Foster had allegedly made comments of a sexual nature about Allen on a previous occasion; however, appellant accepted the invitation and he and Allen attended the barbecue. All four consumed alcohol and had a pleasant evening. At some point, appellant's brother also came by and socialized with the Fosters.
Sally Foster and Allen left the apartment for a period of time to go to the Dairy Mart and to a club. When they returned, Richard Foster was asleep, and appellant and his brother were talking. Appellant and his brother left the Fosters' apartment, and appellant went upstairs to his apartment. Shortly thereafter, Allen left as well.
The Fosters prepared for bed, and a few minutes later heard loud noises, yelling, and screaming coming from upstairs. The Fosters considered calling 9-1-1, but before they could do so, Allen appeared at their sliding patio door. She was visibly shaken and showed signs of being hurt. The Fosters let her into their apartment. The Fosters heard a loud "bam" and the front door of their apartment came crashing in. The dead bolt lock was broken, and wood splintered around the frame of the door.
Appellant came into the apartment and grabbed Allen. She was kicking and screaming as appellant physically dragged her up the stairs to their apartment. The Fosters then heard more noises from upstairs and they immediately called 9-1-1.
Two police officers, Brian Sheline and James Poole, responded to the call. Richard Foster met them in the parking lot and excitedly told them that his neighbor had kicked in the door and dragged his girlfriend out of the apartment by the hair.
The officers arrested appellant, and Officer Poole attempted to interview Allen. Allen was curled in the fetal position, crying, and very shaken up. She did not want to prosecute the case as a domestic violence case or press any charges against appellant. Allen refused medical treatment. According to Officer Poole, she did eventually say that she was in fear of appellant, that he had slapped her, struck her with his hands and hit her with a tabletop.
At trial, Allen testified for the defense and gave a different version of events. She denied that appellant hit her and stated that she was just trying to get away from arguing with appellant. She stated that she and appellant accidentally broke the door to the Fosters' apartment when she fell against the door while trying to get away from appellant.
Appellant testified similarly, acknowledging that he and Allen had argued, but denying that he struck her. Appellant stated that after Allen left the apartment, he went outside to look for her. He saw her trying to get into the Fosters' apartment and tried to stop her, but inadvertently pushed her into the door.
Appellant was charged with one count of aggravated burglary in violation of R.C. 2911.11, and one count of kidnapping in violation of R.C. 2905.01 as a result of the events of February 26 and 27, 2000. On October 30, 2000, the case was set for a jury trial. Prior to the presentation of evidence, the prosecutor moved to dismiss the kidnapping count, and the trial court granted the motion and dismissed the charge. The jury returned a verdict of guilty on the lesser-included offense of burglary, a felony of the second degree. By judgment entry filed January 30, 2001, the trial court imposed a three-year term of community control.
Appellant has assigned the following on appeal:
First Assignment of Error
 Appellant's conviction was not supported by sufficient credible evidence.
Second Assignment of Error
 The judgment of the trial court was contrary to the weight of the evidence.
Third Assignment of Error
 The trial court committed reversible error by admitting irrelevant hearsay statements.
In his first assignment of error, appellant challenges the sufficiency of the evidence used to convict him of burglary. Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997),78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
Appellant contends the evidence introduced at trial was insufficient to establish all the elements of burglary. Specifically, appellant contends that there was no evidence that appellant committed a criminal offense while in the Fosters' apartment.
Upon a thorough review of the record, we are convinced that the evidence advanced by the state at trial was more than sufficient to prove the offense of burglary. The relevant portion of R.C. 2911.12(A)(1) defines the offense of burglary as follows:
 No person, by force, stealth, or deception, shall do any of the following:
 (1) Trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense.
Here, the state proceeded on the theory that appellant trespassed into the Foster apartment with the purpose to assault Allen. R.C. 2903.13(A) sets forth the elements of assault: "No person shall knowingly cause or attempt to cause physical harm to another." R.C. 2901.01(A)(3) defines "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "[W]hen accompanied by the requisite intent, a '* * * shove, push or grab * * * ' may satisfy the `physical harm' element of assault." In re Mark M. (Feb. 4, 2000), Erie App. Nos. E-99-028 and E-99-046, unreported, discretionary appeal disallowed (2000), 88 Ohio St.3d 1513 (citing State v. Weber [Oct. 9, 1998], Huron App. No. H-98-005, unreported). See, also, In re Pollitt (Oct. 10, 2000), Adams App. No. 00 CA 687, unreported; and State v. Neff (Sept. 30, 1992), Franklin App. No. 92AP-655, unreported.
Here, after viewing the evidence in the light most favorable to the prosecution, the state easily met its burden regarding the charge of burglary. There was evidence that appellant broke into the apartment by force and grabbed Allen by the hair. Allen was kicking and screaming as appellant physically dragged her out of the apartment and up the stairs to their own apartment for the apparent purpose of continuing the assault. As such, the first assignment of error is not well-taken and is overruled.
In his second assignment of error, appellant contends this is one of the rare cases in which this court should evaluate the evidence produced at trial and reach the opposite conclusion from the jury. Appellant argues the defense testimony far outweighed that of the prosecution, and that the Fosters made the erroneous conclusion that appellant had assaulted Allen when they were only engaged in a heated argument and no assault occurred.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
At trial, Allen's version of events was contradicted by statements she made to police at the time of the incident. Although not used as substantive evidence of the offense, the statements made to Officer Poole adversely affected Allen's credibility. The jury could reasonably conclude that Allen's earlier statements corresponded so closely with the testimony of the Fosters that her testimony on the stand should be afforded little or no weight. Moreover, the jury could properly find defendant's version-that he accidentally fell into the Fosters' door-to be much less credible than the account given by the Fosters and the police. As this court has previously stated, it was within the province of the trial court to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). On the facts presented at trial, we find no error in the jury's verdict.
The reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and to weigh the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We have reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses. We cannot say that the jury, in resolving conflicts in the evidence, lost its way. Therefore, appellant's second assignment of error is not well-taken and is overruled.
In his third assignment of error, appellant argues that the trial court erred in admitting statements made by Allen to Officer Poole shortly after the incident occurred. Appellant contends that these statements were not inconsistent with Allen's testimony and were therefore inadmissible as prior inconsistent statements. The trial court initially agreed they were not admissible as prior inconsistent statements, but allowed the statements in under an exception to the hearsay rule as they concerned her "then existing state of mind, emotion, sensation, or physical condition." Evid.R. 803(3).
The first group of statements the trial court permitted Officer Poole to testify as to clearly fell within the ambit of Evid.R. 803(3). Allen complained to Officer Poole of pain in the chest and back area. Allen then further indicated to Officer Poole that she was struck with hands and with a tabletop; she was pushed, slapped, grabbed, kicked, and threatened. Officer Poole then testified that Allen told him that, after she and appellant had returned to their residence, they began arguing and appellant accused her of having an affair. He became very angry, and she decided that it was time for her to leave. At that point, appellant grabbed Allen and started striking her. Allen ran to the couch and curled up, and appellant slammed a table top against her. At that point, Allen told Officer Poole that she was in fear for her life, and she fled to the sliding glass door to jump off the balcony. The trial court stopped any further recitation of what happened at the stair rail leading to the outside. The trial court then indicated it would allow testimony as both a statement of state of mind and as a prior inconsistent statement:
 THE COURT: * * * Some of it is hearsay and some of it isn't. Present statement of a state of mind or statement expressed to the officer concerning pain or what might have happened when the witness originally testified that nothing happened, certainly would be, you know, a conflict; and, certainly, the jury has the right to judge the credibility of a witness, based on the officer — the officer's testimony, you know, you test his credibility. You test the witness's credibility.
* * *
 * * * I am going to allow just the testimony about the confrontation or lack there of between the defendant and Andrea and limit it to that, because it's Andrea's — — she said one thing. Certainly, the jury has the right — I'm not judging — * * * .
 It doesn't go to the truth of it. It's rebuttal testimony. It's going basically, to the credibility or noncredibility of what was said before by Andrea. * * * [Tr. 211-213.]
We agree with the trial court that the statements were admissible as prior inconsistent statements. Allen had testified that appellant did not throw any household items during their argument. She had testified that appellant did not strike her, that she was not fearful of appellant, and that she had only climbed down the balcony to avoid further verbal confrontation, not to escape physical assault. The statements made to Officer Poole were in direct conflict with her testimony and therefore admissible as prior inconsistent statements to impeach her credibility. For these reasons, appellant's third assignment of error is not well-taken and is overruled.
Based on the foregoing, appellant's three assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.