OPINION
{¶ 1} Plaintiff-appellant, George E. Green, appeals from the December 12, 2001 judgment entry of the Ohio Court of Claims overruling appellant's objections to the November 6, 2001 magistrate's decision, and adopting the magistrate's decision and recommendation. For the following reasons, we affirm the decision of the Ohio Court of Claims.
{¶ 2} Appellant is an inmate currently incarcerated at Warren Correctional Institution. On March 29, 1999, appellant filed a complaint against the Ohio Department of Rehabilitation and Correction ("DRC") alleging that the corrections officers ("CO") were negligent in using unnecessary and undue force to protect against a perceived risk.
{¶ 3} The following facts precipitated the filing of appellant's complaint against DRC. On March 13, 1997, appellant was transferred from Unit D1 to Unit D3 at the Corrections Reception Center ("CRC") in Orient, Ohio.[1] After entering the unit, appellant was subject to a "shakedown" for weapons or contraband. During this procedure, appellant became confrontational with COs James Stewart and Bruce Bolden.
{¶ 4} Conflicting testimony about the verbal confrontation was presented during proceedings before the magistrate on February 22, 2001. Appellant testified that CO Bolden became angry with appellant because appellant was mumbling. (Tr. 99.) Appellant further testified that CO Bolden poked him in his chest and asked him if he had a problem with CO Bolden. (Tr. 100.) CO Bolden testified that appellant used threatening and obscene language in expressing his dissatisfaction with the shakedown. (Tr. 45-46.) CO Bolden testified that appellant disregarded the officer's direct orders to calm down and participate in the search. (Tr. 47.)
{¶ 5} CO John Ison testified that he responded to Unit D3 when he heard yelling. (Tr. 58.) When he arrived to Unit D3, CO Ison observed appellant being verbally abusive. COs Ison and Bolden handcuffed appellant, and escorted him out of the unit. Appellant began to resist and was placed in an "escort hold" used primarily when inmates are not cooperating.[2]
Appellant argues that the COs use of force in grabbing him by his shoulder exacerbated a pre-existing shoulder injury and caused him great pain. Appellant contends that although he informed the COs that his shoulder was injured and that he was in pain, the COs ignored his complaints. Appellant additionally contends that when the COs kicked his feet from underneath him, he suffered further injury to his shoulder, back, neck and other parts of his body. (Complaint ¶ 2.)
{¶ 6} After escorting appellant to the "key man" post, Sergeant Robert Castle assisted CO Bolden.[3] CO Bolden and Sergeant Castle continued to use the "escort hold" on appellant. Sergeant Castle testified that appellant continued to make threats and struggle throughout the escort. (Tr. 80.) Appellant maintained that Sergeant Castle kicked his feet out from underneath appellant when appellant attempted to walk.
{¶ 7} Appellant was taken back to a cell in Unit D1, where a nurse examined him. The nurse prescribed appellant pain medication for his shoulder pain, and scheduled an appointment with a doctor.
{¶ 8} In his complaint, appellant alleged that the officers were negligent in causing his injuries because they used unnecessary and undue force as the officers attempted to restrain appellant. (Complaint ¶ 3.) Appellant alleged that the DRC negligently failed to give the COs adequate training and supervision in dealing with mentally ill inmates.
{¶ 9} On November 6, 2001, the magistrate held that appellant's testimony was not credible regarding the "escort hold" technique. The magistrate held that appellant did not refer to CO Bolden's escort technique or that either of the COs purposefully kicked appellant's feet out from underneath him in his initial complaint filed June 1997. The magistrate found no merit in appellant's claim that the DRC negligently failed to adequately train its employees to interact with mentally ill inmates. The magistrate concluded that appellant failed to prove, by a preponderance of the evidence, that the DRC breached any duty of care owed to appellant.
{¶ 10} On November 15, 2001, appellant filed objections to the magistrate's decision. On November 28, 2001, the DRC filed a response to appellant's objections. On December 12, 2001, the trial court overruled appellant's objections and adopted the magistrate's decision and recommendation as its own. It is from this judgment entry that appellant appeals, assigning the following two assignments of error:
{¶ 11} "Assignment of Error No. 1:
{¶ 12} "The trial court erred and abused its discretion in failing to rule specifically on the detailed objections of defendant-appellant.
{¶ 13} "Assignment of Error No. 2:
{¶ 14} "The decision of the court is against the manifest weight of the evidence and is contrary to law."
{¶ 15} In his first assignment of error, appellant contends that the trial court failed to rule on his specific objections. Civ.R. 5 3(E)(4)(b) provides:
{¶ 16} "The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter."
{¶ 17} This court recognizes that it is a better practice for the trial court to individually itemize and address objections separately. Layne v. Ohio Dept. of Rehab. Corr. (Apr. 26, 2001), Franklin App. No. 00AP-724. Here, however, appellant produced mere unsupported accusations that the trial court did not exercise its own judgment in considering appellant's specific objections. In its judgment entry, the trial court based its decision after a "review of the record, the magistrate's decision and the objections." Appellant's first assignment of error is not well-taken and is overruled.
{¶ 18} In his second assignment of error, appellant sets forth several arguments to support his contention that the trial court's decision is against the manifest weight of the evidence and contrary to law. We will address each of appellant's contentions accordingly.
{¶ 19} In reversing a judgment of the trial court on the basis that the verdict is against the manifest weight of the evidence, "an appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. No. 97CA006897; Miller-Wagenknecht v. City of Munroe Falls (Dec. 5, 2001), Summit App. No. 20324; and Flowers v. City of Whitehall, Franklin App. No. 01AP-1150, 2002-Ohio-3890, at ¶ 12. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548.
{¶ 20} "Moreover, `every reasonable presumption must be made in favor of the judgment and the findings of facts [.]' * * * Furthermore, `if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment.' * * *." Flowers, at ¶ 13, quoting Miller-Wagenknecht.
{¶ 21} As such, we must examine the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way, and whether it created such a manifest miscarriage of justice that its judgment must be reversed. Therefore, we will review the testimony and evidence presented by each party.
{¶ 22} First, appellant contends that the trial court's decision is against the manifest weight of the evidence because there was no evidence that the COs were trained by the DRC to handle and transport mentally ill inmates, and that the lack of training affected the COs' handling of appellant.
{¶ 23} Appellant testified that, on March 13, 1997, he was placed in Unit D1 overnight because he was having mental issues. (Tr. 95.) Appellant testified that within one month of his arrival at the reception center, a Russian psychologist or psychiatrist diagnosed appellant as a paranoid schizophrenic. (Tr. 106.) However, appellant failed to present any corroborating evidence that he was mentally ill, and that his mental illness interfered with his understanding of what was happening at the time of the incident, or that it interfered with his understanding that his statements to CO Bolden violated the institution rules. (Tr. 112, 126.)
{¶ 24} Appellant alleges that the Cos' lack of training in dealing with mentally ill inmates caused the March 13, 1997 incident. While CO Bolden did not receive any training in regards to dealing with mentally ill inmates, and CO Ison received training after the incident on March 13, 1997, Sergeant Castle did receive special training prior to working in Unit D, and prior to the March 13, 1997 incident. However, appellant has failed to present any evidence that the officers' training or lack of training was a proximate cause of appellant's injuries. Appellant has failed to demonstrate that the COs violated any regulation, policy, or procedure for dealing with mentally ill inmates.
{¶ 25} Second, appellant sets forth several arguments that the trial court's decision was against the manifest weight of the evidence because the COs used excessive, unauthorized force in subduing and transferring appellant from Unit D3 back to D1. Appellant specifically contends that his alleged injuries were a result of the COs using an inappropriate escort technique, and CO Castle purposefully kicking appellant's feet from underneath him.
{¶ 26} The Ohio Administrative Code provides for instances in which it becomes necessary for COs to use force to control inmates. Ohio Adm. Code 5120-9-01(C)(3) provides that a CO may legally use force to control or subdue "an inmate who refuses to obey prison rules and regulations." Additionally, "[t]he superintendent, administrator, or staff member of a correctional institution is authorized to use force, other than deadly force, when and to the extent he reasonably believes that such force is necessary to enforce the lawful rules and regulations of the institution and to control violent behavior." Ohio Adm. Code 5120-9-01(E).
{¶ 27} In this case, appellant contends that he was willing to be escorted peacefully up to the point that it became apparent that the escort procedure was going to exacerbate his shoulder injury. Appellant testified that he started to scream at Sergeant Castle, and "may have been swinging my arms because of me screaming and trying to get these guys off of me." (Tr. 103.) Appellant further admitted that he used obscene language in response to CO Bolden's questions. (Tr. 101.)
{¶ 28} CO Bolden testified that appellant was being very verbal, made threats, and was given "several direct orders to stand up and walk, which he didn't comply to; dragging his feet; basically, didn't comply with any orders." (Tr. 32, 45.) CO Bolden testified that when he gave appellant a direct order to calm down, appellant responded with, " `Fuck you guys. I will get you somehow' " and " `Fuck you. You don't know who you're fucking with.' " (Tr. 45, 46.) CO Bolden further testified that during the 20-minute incident, appellant refused, when given a direct order, to place his hands on the wall, to calm down, and to walk. (Tr. 48.)
{¶ 29} COs Bolden and Ison testified that when appellant approached them in an aggressive manner, they placed appellant in an escort hold. (Tr. 48-49, 63.) CO Ison assisted CO Bolden with escorting appellant back to Unit D1 until Sergeant Castle took over to assist escorting appellant. CO Bolden testified that he learned the escort technique through an in-service program that the institution offered yearly. (Tr. 48, 49.) Sergeant Castle testified that he learned the escort technique through the corrections training academy where he is an instructor. (Tr. 91.) CO Bolden testified that when he placed appellant in the escort hold, he took his right arm and put it in between the trunk of appellant's body, placed his right hand over appellant's shoulder to tilt appellant forward to gain leverage to escort appellant. (Tr. 48-49.)
{¶ 30} CO Ison testified that he observed appellant being verbally abusive, and yelling. (Tr. 60.) Sergeant Castle testified that when he saw appellant, he was struggling with COs Ison and Bolden in resisting the escort, was swinging his handcuffed arms behind him, dragging his feet, not wanting to walk as he was instructed to do, and directing threats to CO Bolden. (Tr. 80, 84.)
{¶ 31} Although appellant additionally testifies that Sergeant Castle kicked his feet from underneath him about five to seven times, counsel for appellant failed to cross-examine Sergeant Castle about his alleged action. Absent any evidence as to how Sergeant Castle would have testified, and based on the foregoing, it was reasonable for the magistrate to conclude that appellant's testimony on this issue was not credible. The COs had within their authority to control or subdue appellant for his threats and his refusal to obey the prison rules and regulations. Appellant has failed to demonstrate how the COs' use of the escort technique or even having his feet kicked from underneath him caused his injuries when appellant admitted to resisting the COs. Under Ohio Adm. Code 5120-9-01(E), the use of force to subdue a resisting inmate is reasonable force, not unnecessary force. As such, the trial court's decision was not against the manifest weight of the evidence.
{¶ 32} Fourth, appellant contends that the trial court abused its discretion in judging the credibility of appellant. The trial court specifically held that appellant's testimony regarding the COs' escort procedure and the cause of appellant's alleged injury was not credible.
{¶ 33} It was within the province of the trial court to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). Issues of fact are for the trier of fact to determine, and the determinations of the trier of fact should be given deference by reviewing courts. State v. DeHass (1967),10 Ohio St.2d 230. Resolution of credibility issues being for the trial court, this court will not reverse the trial court's decision if it is supported by competent, credible evidence: an error in law is a legitimate ground for reversal, but a difference of opinion on the credibility of witnesses is not. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81.
{¶ 34} A careful review of the record of the proceedings reveals inconsistencies in appellant's testimony. During the course of his testimony, appellant testified that putting his hands behind his head, relaxing his arms, and stretching his arms causes his shoulder to dislocate. (Tr. 130.) Although appellant alleged in his complaint that his shoulder injury prohibits him from doing the type of work he wants to do upon his release, he admitted to playing baseball and handball in the institution in order stay in shape. (Tr. 115-116.) Furthermore, while appellant complained of this exacerbated shoulder injury and the pain it caused, the record reveals that appellant continued to resist the COs. Appellant himself stated, "I may have been swinging my arms because of me screaming and trying to get these guys off of me. I don't remember." (Tr. 103.) Additionally, Sergeant Castle testified that appellant "was flailing his arms behind him. He was cuffed from behind and he was just swinging his arms * * *." (Tr. 80.)
{¶ 35} Given the evidence discussed, we find that the trial court's decision is supported by competent, credible evidence. After considering all of the testimony and evidence, we are unable to find that the trial court lost its way or created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. Accordingly, appellant's second assignment of error is not well-taken and is overruled.
{¶ 36} For the foregoing reasons, appellant's first and second assignments of error are overruled and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
BOWMAN and DESHLER, JJ., concur.
[1] Inmates with mental health or disciplinary problems are housed in the D unit.
[2] During the "escort hold," the CO places one of his arms underneath the inmate's arms while the inmate's arms were being cuffed behind his back.
[3] A "key man" controls the front door to the D units.