OPINION
{¶ 1} Jose Zurita-Velasquez ("appellant"), appeals from his convictions for aggravated arson, in violation of R.C. 2909.02(A)(1) and (A)(2). He assigns five errors for our consideration:
 First Assignment of Error: The evidence was legally insufficient to support appellant's convictions for Aggravated Arson.
 Second Assignment of Error: The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29. *Page 2 
 Third Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
 Fourth Assignment of Error: Appellant's Due Process rights were violated when, over objection, the Court permitted witnesses to testify about a surveillance video that purported to show appellant near the scene when the video had been destroyed and appellant's trial counsel never had the opportunity to view the video.
 Fifth Assignment of Error: The two aggravated arson counts are allied offenses of similar import committed with a single animus. The court erred by imposing sentences for the two offenses when it should have directed the prosecutor to elect which offense conviction should be entered on and sentence pronounced.
 {¶ 2} Because the first three assignments of error involve common issues, we address them jointly.
 {¶ 3} Crim. R. 29(A) reads:
 Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
 {¶ 4} Thus, assignment of error one and two address the same issue, namely the sufficiency of the evidence. The third assignment of error addresses the weight of the evidence.
 {¶ 5} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a *Page 3 
verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. SeeThompkins, at 387.
 {¶ 6} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175); see alsoColumbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 7} R.C. 2909.02(A) reads:
 No person, by means of fire or explosion, shall knowingly do any of the following:
 (1) Create a substantial risk of serious physical harm to any person other than the offender; *Page 4 
 (2) Cause physical harm to any occupied structure;
 (3) Create, through the offer or acceptance of an agreement for hire or other consideration, a substantial risk of physical harm to any occupied structure.
 {¶ 8} In this case, no debate exists as to whether someone caused fires which seriously damaged an apartment at 2389 Clybourne Road. The apartment was the home of Cecilia Mason, her daughter, and other people. As such, the apartment was an occupied structure. The question at trial was whether or not appellant was the person who started the fires.
 {¶ 9} To prove that appellant was responsible, the State of Ohio presented several witnesses. Cecilia Mason testified that she had dated appellant and had, at one point, lived with him for approximately one year. She had been trying to end the relationship for about one month before the fires. On the night of the fires, she had gone to a concert and dance. She turned off her cell phone to avoid getting calls from appellant that night. She described appellant as being very jealous.
 {¶ 10} Cecilia Mason's testimony established a motive for appellant to start the fires in the bedrooms of her apartment. The motive was to punish her for going to a concert/dance without him and for attempting to end the relationship.
 {¶ 11} Other witnesses established that appellant acted on the motive. Eduardo Gomez Vasquez told investigators less than one week after the fires, he saw appellant enter the apartment shortly before the fires started. Vasquez initially stated that he was 80 percent sure the man he saw was appellant, but he described himself as completely sure when he testified at trial. *Page 5 
 {¶ 12} Jose Santos, who also lived in the apartment complex, testified he saw appellant use a key to enter the apartment about 30 minutes before the fires were noticed. Santos knew appellant from work and was sure appellant was the person who entered the apartment at that time.
 {¶ 13} Louis Vargas, who managed the apartment complex, had a videotape of the evening which showed appellant in his distinctive purple SUV driving around the complex and finally leaving when firefighters responded to the fires.
 {¶ 14} The defense, at trial, presented no evidence to weigh against the state's evidence, but instead raised questions about the credibility of the state's witnesses.
 {¶ 15} The evidence was clearly sufficient to establish that appellant was the person who started the fires.
 {¶ 16} The first and second assignments of error are overruled.
 {¶ 17} Construing all the evidence as we are required to do, the conviction was clearly not against the manifest weight of the evidence. This is not the exceptional case where the evidence weighs heavily against the convictions. See again Thompkins, at 387. The third assignment of error is also overruled.
 {¶ 18} In the fourth assignment of error, counsel for appellant asserts that the trial judge should not have allowed testimony about the content of a surveillance video which had been erased by accident by Louis Vargas, the manager of the apartment complex where the fires occurred. Counsel alleges that appellant was denied due process of law under the circumstances. *Page 6 
 {¶ 19} Counsel appropriately directs our attention to the fact that criminal prosecutions are to be guided by prevailing motions of fundamental fairness. See for instance, California v. Trombetta (1984),467 U.S. 479, 104 S.Ct. 2528.
 {¶ 20} Applying that notion does not result in a finding that the trial court judge in this case abused his discretion in permitting testimony about the tape which showed appellant driving around the apartment complex on the night of the fires. In Arizona v.Youngblood (1988), 488 U.S. 51, 109 S.Ct. 333, the Supreme Court of the United States required that the destruction, loss or lack of preservation of evidence such as a videotape must have occurred through the bad-faith activity or inactivity of the government for a violation of due process to have occurred. Such bad faith was not present here. Louis Vargas simply failed to prevent his surveillance cameras from taping over the videotape of the night of the fires. The State of Ohio had no responsibility for Vargas' mistake.
 {¶ 21} Further, given the testimony that residents of the apartment complex saw appellant entering the apartment shortly before the fires, and the fact appellant and his SUV were in the area was not in serious dispute. Appellant was not living in the apartment anymore and he obviously got there somehow. The fact his SUV was there that evening was not critically important.
 {¶ 22} The fourth assignment of error is overruled.
 {¶ 23} The fifth assignment of error alleges that aggravated arson, under R.C. 2909.02(A)(1), is an allied offense of similar import to aggravated arson under R.C. 2909.02(A)(2). To set forth R.C. 2909.02(A) again:
 No person, by means of fire or explosion, shall knowingly do any of the following: *Page 7 
 (1) Create a substantial risk of serious physical harm to any person other than the offender;
 (2) Cause physical harm to any occupied structure;
 (3) Create, through the offer or acceptance of an agreement for hire or other consideration, substantial risk of physical harm to any occupied structure.
 {¶ 24} Convictions for allied offenses of similar import are barred by R.C. 2941.25(A), which reads:
 Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 25} The Supreme Court of Ohio has addressed R.C. 2941.25(A) in the recent case of State v. Winn ___ N.E.2d ___, 2009-Ohio-1059 in the context of the offenses of aggravated robbery and kidnapping. In theWinn case, the Supreme Court of Ohio affirmed its earlier opinions inState v. Rance (1999), 85 Ohio St.3d 632 and State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625. In Cabrales, the court rejected strict textual comparison and held that, if the offenses are so similar the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import.
 {¶ 26} In appellant's case, one set of fires in an apartment complex both caused physical harm to an occupied structure and created a serious risk of physical harm to others who lived in the apartments. However, the statutes do not automatically overlap to the point that commission of one offense necessarily results in the commission of the other. A small fire could harm the apartment where it started without endangering anyone *Page 8 
else. Likewise, a house well separated from other residences could burn to the ground without endangering anyone. In both situations R.C. 2909.02(A)(2) is violated, but R.C. 2909.02(A)(1) is not. On the other hand, a fire could be set on a crowded sidewalk or a hand grenade could be caused to explode in a crowded, open area with no structures being involved. In such situations R.C. 2909.02(A)(1) is violated, but R.C. 2909.02(A)(2) is not.
 {¶ 27} In brief, R.C. 2909.02(A)(1) is more directed toward protecting people and R.C. 2909.02(A)(2) is more directed toward protecting buildings frequented or inhabited by people. The two statutes frequently overlap, but on some occasions do not.
 {¶ 28} The facts in appellant's case show a similar set of crimes having been caused by the fires he started. As a result, the trial court judge sentenced him to concurrent sentences. However, the two arson crimes, in general, are not so similar that commission of one always results in the commission of the other. Thus, under Cabrales, we do not have allied offenses of similar import for purposes of R.C. 2941.25.
 {¶ 29} The fifth assignment of error is overruled.
 {¶ 30} All five assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT and CONNOR, JJ., concur. *Page 1