OPINION
{¶ 1} Defendant-appellant, Ladonice M. Jackson, appeals from the April 5, 2002 judgment entry of the Franklin County Court of Common Pleas, finding him guilty of aggravated robbery, robbery, kidnapping, abduction, each with specifications, and guilty of having a weapon under disability. Appellant was sentenced to an aggregate term of seven years incarceration. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On December 21, 2001, Timothy Lear, walked to Mike and Ann's Tavern on East Main Street. Before entering the tavern, appellant approached Lear and offered to sell Lear drugs. Lear testified that appellant said, "`I got some crack. I can get you some weed. * * * Can you give me some money, like $10?'" (Tr. 80.)
 {¶ 3} Lear declined the offer for drugs and told appellant that he had no extra money. Appellant then told Lear that he needed $2 for his car. Lear offered to buy appellant a beer, and appellant accepted.
 {¶ 4} The two entered the tavern, sat down at the bar, and appellant ordered two Budweiser beers. Appellant drank some of his beer, and then left. Lear thought appellant went to the restroom, but when appellant did not return, Lear left, and walked across the street to a Dairy Mart. Lear purchased two 40-ounce bottles of beer and proceeded to walk home.
 {¶ 5} As he was walking home, Lear testified that appellant approached him, and asked him where he was going. Lear stated that appellant hesitated, looked around, pulled out a gun, and stuck it to his head. Appellant grabbed Lear's arm, and pulled him between two houses. Appellant asked Lear for his money. When Lear responded that he did not have any cash, appellant began to search Lear's person. Appellant took some money and a half pack of Basic Full Flavor 100s cigarettes. Appellant took off walking, and Lear proceeded to walk home.
 {¶ 6} Lear testified that he did not contact the police right away. Instead, when he arrived at home, he testified that he "was kind of shaken a little bit. I opened up a beer * * *." (Tr. 91.) Lear realized that he did not have any cigarettes, so he decided to go back out to the store. Lear had a $100 bill. He called a cab, but realized that he had to break the $100 in order to pay the cab driver. Lear decided that the tavern would be able to break the $100 bill. On the way to the tavern, Lear told the cab driver about the incident that took place with appellant. The cab driver suggested that Lear call the police and report the incident.
 {¶ 7} Before approaching the tavern, Lear saw a police car at a BP gas station on the corner of Main Street and James Road. Lear told the officer about what happened, and the officer suggested that they ride around to see if they could find appellant. Lear told the officer that he had to pay the cab driver. So Lear got back into the cab and headed to the tavern to break the $100. The officer followed behind. On their way to the tavern, Lear spotted appellant walking down the street. The cab driver pulled in the tavern and Lear got out of the cab and told the officer where he saw appellant. Lear gave the officer a physical description of appellant and what appellant was wearing. Appellant was later apprehended and Lear identified him as the man who robbed him.
 {¶ 8} On December 27, 2001, appellant was indicted on six counts: one count of aggravated robbery with specification, one count of robbery with specification, a felony of the second degree, one count of robbery with specification, a felony of the third degree, one count of kidnapping with specification, one count of abduction with specification, and one count of having a weapon under disability.
 {¶ 9} A jury trial commenced on April 2, 2002 and ended on April 4, 2002. The jury found appellant guilty on all six counts of the indictment. The aggravated robbery and two robbery counts were merged, and the kidnapping and abduction counts were merged. The state elected sentencing on the aggravated robbery and kidnapping counts. Appellant was sentenced to four years each for aggravated robbery and kidnapping, 11 months for having a weapon under disability, and an additional three years actual incarceration for the use of a firearm. The aggravated robbery and kidnapping counts ran concurrent to each other, and concurrent to having a weapon under disability. Appellant was sentenced to an aggregate term of seven years. It is from this sentencing entry that appellant appeals, assigning the following as error:
 {¶ 10} "Assignment of error number one:
 {¶ 11} "The trial court erred when it allowed the jury to be informed that the defendant had previously been convicted of the illegal possession of drugs in 1999 after the defendant had agreed to admit to this fact and remove it from the jury's consideration in order to avoid the prejudicial impact of the prior conviction on the jury's deliberations.
 {¶ 12} "Assignment of error number two:
 {¶ 13} "The trial court erred when it did not allow counsel for the defendant to fairly comment upon the evidence during closing argument.
 {¶ 14} "Assignment of error number three:
 {¶ 15} "The trial court erred when it overruled the defendant's motion to dismiss for lack of a speedy trial.
 {¶ 16} "Assignment of error number four:
 {¶ 17} "There was insufficient evidence to support the finding that the defendant possessed a firearm as defined in R.C. 2923.11 and the finding was not supported by the weight of the evidence presented."
 {¶ 18} In his first assignment of error, appellant contends that the trial court erred by allowing the state to emphasize evidence of his prior conviction for possession of drugs, even though appellant agreed to concede to the trial judge that he had a prior conviction that would satisfy the prior conviction element of the weapons under disability offense; appellant requested that the court submit the weapons under disability charge solely on the issue of whether he had a firearm. Appellant relies on the United States Supreme Court case of Old Chief v. United States (1997), 519 U.S. 172, 117 S.Ct. 644. Appellant argues that the state's refusal to enter into the stipulation constituted unfair prejudice because his prior conviction should not have been made known to the jury.
 {¶ 19} In Old Chief, the United States Supreme Court held that a trial court had abused its discretion by rejecting a stipulation that the defendant had committed an offense punishable by imprisonment of more than one year and allowing the prosecution to present the judgment entry of defendant's prior conviction for assault causing bodily injury. Id. at 174. In Old Chief, the defendant was charged with assault with a dangerous weapon and a violation of Section 922(g)(1), Title 18, U.S. Code which makes it unlawful for anyone "`who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year' to `possess * * * any firearm.'" Id. The United States Supreme Court found that the judgment entry should have been excluded pursuant to Evid.R. 403 because the minimal probative value of the judgment entry was substantially outweighed by the danger of unfair prejudice. Id. at 190. The court reasoned that:
 {¶ 20} "The issue is not whether concrete details of the prior crime should come to the jurors' attention but whether the name or general character of that crime is to be disclosed. Congress, however, has made it plain that distinctions among generic felonies do not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute. `A defendant falls within the category simply by virtue of past conviction for any [qualifying] crime ranging from possession of short lobsters * * * to the most aggravated murder.' The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun * * *." Id. at 190-191.
 {¶ 21} The court in Old Chief found that the defendant's stipulation provided the jury with conclusive evidence of the prior conviction element. Id. at 186. In the instant case, the prior possession of drugs conviction is an essential element of the indicted offense of having a weapon under disability pursuant to R.C. 2923.13, which provides in pertinent part:
 {¶ 22} "Unless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 {¶ 23} * * *
 {¶ 24} "(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."
 {¶ 25} The state was required to prove the prior conviction beyond a reasonable doubt in order to prove the offense itself. See State v. Berger (Feb. 19, 1998), Cuyahoga App. No. 71618; State v. Adams (1995),106 Ohio App.3d 139. In this case, appellant asked that the jury not hear the name and nature of his prior convictions. If the trial court had accepted appellant's stipulation, the jury would not have known that appellant had a conviction for possession of drugs. Unlike the federal statute in Old Chief, evidence concerning appellant's prior conviction of possession of drugs was necessary in order for the jury to find appellant guilty of having a weapon under disability as charged.
 {¶ 26} In State v. Henton (1997), 121 Ohio App.3d 501, the Eleventh Appellate District held that the trial court committed reversible error when it rejected Henton's offer to stipulate to one prior felony drug abuse conviction and allowed the prosecution to present evidence of his two prior drug convictions to prove the element of the offense that requires proof of one prior felony drug abuse conviction. The case at hand is distinguishable from Henton because Henton acknowledged that the state was required to prove the existence of one prior felony drug abuse conviction as an element of the offense charged; Henton merely requested that the trial court prohibit the state from introducing evidence of a second felony drug abuse conviction because the second conviction was not necessary to prove an element of the charged offense. In the instant case, appellant did not want any stipulation to go to the jury; he wanted the jury to decide only if he had a firearm, and not whether he had the requisite prior offense. Based on the foregoing analysis, the trial court did not err in permitting the state to bring appellant's prior possession of drugs to the jury's attention. Accordingly, appellant's first assignment of error has no merit and is not well-taken.
 {¶ 27} In his second assignment of error, appellant argues that the trial court erred by not allowing defense counsel to fairly comment on the lack of evidence or corroboration that Lear bought beer from a Dairy Mart. Appellant contends that whether or not Lear purchased a beer affects the witness's credibility, and the trial court's ruling did not give appellant the opportunity to make such an argument.
 {¶ 28} It is axiomatic that great latitude is afforded counsel in the presentation of closing argument. Pang v. Minch (1990),53 Ohio St.3d 186, 194. "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." Id. at paragraph three of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It is the duty of the trial court to control the argument of counsel and to see that it is confined to proper limits, especially where a timely objection was made. See Cusumano v. Pepsi-Cola Bottling Co. (1967), 9 Ohio App.2d 105, 121.
 {¶ 29} In this case, a careful review of the record demonstrates that defense counsel had ample opportunity to comment on uncorroborated evidence, without the state's objection. However, when defense counsel attempted to comment on the state's failure to present witnesses to corroborate Lear's story that he purchased two 40-ounce beers from Dairy Mart, the state objected. The state argued that it was inappropriate for defense counsel to comment on witnesses who did not testify, especially where defense counsel had the same opportunity to call the same witness to testify. The trial court sustained the state's objection holding that defense counsel had to keep his closing argument to matters that were in evidence. Appellant argues that this ruling by the trial court prevented appellant from arguing the lack of corroborating evidence relating to the credibility of Lear. However, a review of the record reveals that appellant was able to and continued to point out gaps in the evidence and the lack of corroborating evidence on certain key points; such as the lack of a sales receipt, the lack of the store's surveillance videotape, and the lack of testimony of a salesperson that a purchase was made.
 {¶ 30} A problem arises when the evidence does not support the argument advanced by counsel on closing to the extent that there is a substantial likelihood that the jury will be misled. Such an argument is improper. See Brokamp v. Mercy Hosp. Anderson (1999), 132 Ohio App.3d 850,868. In this case, the trial court instructed the jury to disregard defense counsel's comment. The trial court's decision to sustain the state's objection was not unreasonable, arbitrary or unconscionable. Accordingly, appellant's second assignment of error lacks merit and is not well-taken.
 {¶ 31} In his third assignment of error, appellant argues that the trial court erred when it overruled appellant's motion to dismiss for lack of a speedy trial. Appellant contends that from the date of his arrest to the date of the trial, 102 days elapsed on the speedy trial clock. Appellant contends that, pursuant to R.C. 2945.71, he should have been tried within 90 days from the time of his arrest. Appellant concedes that defense counsel can waive speedy trial rights on behalf of his client, however, in this case, appellant contends that he objected to the continuance. Appellant argues that, as a result, he was denied his statutory and constitutional rights to a speedy trial.
 {¶ 32} An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I, Ohio Constitution. State v. Taylor, 98 Ohio St.3d 27, 2002-Ohio-7017. Under R.C. 2945.71(C)(2), the state is required to bring a defendant to trial on felony charges within 270 days of his arrest. Each day that the defendant spends in jail in lieu of bail, counts as three days in computing this time. R.C.2945.71(E). However, this time may be tolled by certain events, including continuances granted by the trial court as a result of defense motions and any reasonable continuances granted, other than upon the request of the defendant. Taylor, supra. "A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." State v. McBreen (1978), 54 Ohio St.2d 315, syllabus. Hence, the proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72. State v. DePue (1994),96 Ohio App.3d 513, 516 (each relevant date must be examined to ensure they either tolled the speedy trial statute or allowed it to run).
 {¶ 33} In this case, appellant was charged with a total of six felonies. Under R.C. 2945.71(C)(2), a defendant charged with a felony is required to be brought to trial within 270 days. Appellant was arrested on December 21, 2001. However, since the day of the arrest is not included in a speedy trial computation, time began to run on December 22, 2001. State v. Jones (1997), 119 Ohio App.3d 59, 64. Appellant was indicted on December 27, 2001. The record indicates that on February 19, 2002, defense counsel requested a continuance because defense counsel had a trial in California. The matter was continued to March 11, 2002. Appellant objected to this continuance. Appellant's speedy trial rights were waived at the point defense counsel requested this continuance. Taylor, supra. See State v. Baker (1993), 92 Ohio App.3d 516, 530
(continuances further extend the speedy trial period). Thus, from February 19, 2002 until March 11, 2002, a total of 20 days would be charged against appellant.
 {¶ 34} Being held in jail 102 days between the time of his arrest and the time of the trial did not deny appellant his right to a speedy trial, although each day he was held in jail would normally have counted as three days for purposes of the 270 day speedy trial period for persons accused of a felony. However, the period was tolled for 20 days between the time defense counsel requested the continuance to the time the state requested a second continuance, thereby reducing the period from his arrest to trial to 82 days.
 {¶ 35} Additionally, in Barker v. Wingo (1972), 407 U.S. 514,530, 92 S.Ct. 2182, 2192, the Supreme Court set forth a balancing test to determine whether trial delays are reasonable under the Sixth andFourteenth Amendments to the United States Constitution: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." In this case, being tried four months after his arrest is hardly an unreasonable delay as to result in prejudice to appellant. Defense counsel needed additional time to prepare for appellant's trial, and defense counsel had the authority to execute the waivers of time provisions for the purpose of trial preparation. McBreen, supra. As such the waiver binds appellant. Id. We determine that appellant was not denied his constitutional right to a speedy trial. As such, appellant's third assignment of error lacks merit and is not well-taken.
 {¶ 36} In his fourth and final assignment of error, appellant contends that his convictions on the firearm specifications were not supported by sufficient evidence and were against the manifest weight of the evidence. Appellant specifically argues that a reversal is warranted because (1) there was not enough evidence to prove that the gun was operable, (2) because appellant did not have a gun in his possession at the time he was arrested; and (3) because Lear was not credible.
 {¶ 37} Our review of the record reveals, however, that appellant's convictions are supported by evidence and are not against the manifest weight of the evidence. Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
 {¶ 38} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 39} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. It was within the province of the trier of fact to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). See State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).
 {¶ 40} First, appellant contends there was not enough evidence to prove that the gun used in the robbery was operable. Appellant asserts no testimony was presented as to gunshots, smell of gunpowder, bullets, or bullet holes.
 {¶ 41} R.C. 2923.11(B)(1) defines a firearm as:
 {¶ 42} "[A]ny deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but which can readily be rendered operable."
 {¶ 43} "A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Thompkins, paragraph one of the syllabus.
 {¶ 44} In this case, we find there was sufficient evidence to establish proof beyond a reasonable doubt that appellant possessed a firearm and that the firearm was operable or could readily have been rendered operable at the time he robbed Lear. The jury considered the relevant facts and circumstances surrounding the crime in determining that appellant was guilty of the firearm specification. Lear described the gun that appellant pulled and stuck to his head as "shiny silver."
 {¶ 45} "It was about six inches [in size]. It was a fairly good-sized gun. * * * It looked like a Colt .45 size." (Tr. 86.) Appellant demanded money from Lear. Lear further testified that, "I was afraid he was going to shoot me because he became more and more agitated after he got $2." (Tr. 89.) Lear testified that he was 100 percent certain that appellant had a gun to his head. "* * * [W]here an individual brandishes a gun and implicitly but never expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Thompkins at 384. The evidence in this case was sufficient for the jury to find appellant guilty of the firearm specifications.
 {¶ 46} Second, appellant contends that a reversal is warranted because appellant did not have a gun in his possession when he was arrested. From the time appellant robbed Lear to the time appellant was apprehended, almost two hours had elapsed. Based upon the foregoing evidence and reasonable inferences drawn therefrom, it was not unreasonable for the jury to have found, after viewing the evidence in a light most favorable to the state, that at the time appellant was stopped by the officer that he previously discarded the weapon as he was walking down the street prior to his apprehension. As noted, "[a] reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt." State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
 {¶ 47} Finally, appellant contends that his conviction was not supported by the evidence and was against the manifest weight of the evidence because Lear was not credible. Appellant contends that Lear was inconsistent in his testimony regarding how much money he had in his pockets at the time he was robbed.
 {¶ 48} A careful review of the record demonstrates that it appears that Lear was uncertain as to the exact amount of money he had in his pockets. Lear testified at the suppression hearing that, "I wasn't sure exactly how much was in my pocket." (Tr. 34.) At trial, Lear testified that when he left the bar he had about $25 in his pockets. (Tr. 126.) Lear testified, "I had a little bit of money in this pocket, and I had some money in my coat pocket from the change in the store. There was a dollar and some change in my one pocket." (Tr. 88.) We are unpersuaded by appellant's contention that the jury's verdict was against the manifest weight of the evidence. The jury in this case was in the best position to observe Lear and make credibility determinations. We cannot say that in making such credibility determinations the jury clearly lost its way. Even if we were to determine that Lear's testimony was inconsistent, "a conviction is not against the manifest weight of the evidence merely because the trier of fact may have heard inconsistent testimony." State v. Crawley (Mar. 12, 2002), Franklin App. No. 01AP-532.
 {¶ 49} Based upon the evidence adduced at trial, this court concludes that the jury, in finding appellant guilty of the firearm specifications, did not lose its way and create such a manifest miscarriage of justice as to require a new trial. We hold that appellant's convictions are against neither the weight nor the sufficiency of the evidence. Accordingly, appellant's fourth assignment of error lacks merit and is not well-taken.
 {¶ 50} For the foregoing reasons, appellant's first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur.